[No. C053802. Third Dist. Apr. 30, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTHONY MARVELL SEMIEN, JR., Defendant and Appellant.

## Counsel

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette and Michael P. Farrell, Assistant Attorneys General, and John G. McLean, Deputy Attorney General, for Plaintiff and Respondent.

## Opinion

**SIMS, Acting P. J.**—We hold that the prosecutor did not violate the constitutional rights of defendant by using a peremptory challenge to excuse a prospective juror who was an African-American pastor whose spouse worked in the county welfare department.

■ We also hold that conviction for violation of Penal Code section 245, subdivision (c) (assault on peace officer),[1] constitutes a "strike" even though the assault was not with a deadly weapon.

Defendant Anthony Marvell Semien, Jr., appeals following his conviction for evading a police officer while driving recklessly (Veh. Code, § 2800.2, subd. (a)), threatening injury to an officer in the performance of duties (§ 71, subd. (1)), resisting an executive officer by threat, force, or violence (§ 69), and threatening to commit a crime resulting in death or great bodily injury

---

[1] Undesignated statutory references are to the Penal Code.

(§ 422), with two prior serious felony convictions and two prior prison terms (§§ 667, subds. (a)(1), (d), (e)(2), 667.5, subd. (b), 1192.7). Defendant contends (1) the prosecutor excused the sole African-American prospective juror based on racial bias, and (2) the evidence is insufficient to support one of the prior convictions as a serious felony within the meaning of section 667. We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with:

1. Evading a police officer with reckless driving (Veh. Code, § 2800.2, subd. (a));

2. Threat of injury to an officer in the performance of his or her duties (§ 71, subd. (1));

3. Resisting an executive officer by means of threat, force, or violence (§ 69);

4. (Misdemeanor) vandalism (§ 594);

5. Threat of injury to an officer in the performance of his or her duties (§ 71, subd. (1)); and

6. Threats to commit a crime resulting in death or great bodily injury (§ 422).

It was also alleged that defendant had two prior serious felony convictions—a 1993 forcible rape (§ 261, subd. (a)(2)), and a 1997 assault with a deadly weapon on a peace officer (§ 245, subd. (c))—and two prior prison terms for enhancement purposes (§§ 667, 667.5).

Evidence adduced at trial included the following:

On February 16, 2006, at 1:18 a.m., two California Highway Patrol (CHP) officers traveling in a marked patrol car on Interstate 80 did a random check on a white Acura and learned its registration had expired, though the car bore a current registration tag. The officers tried to pull the car over, but the Acura

sped up, exited the highway, crossed the median, reentered the highway going the opposite direction, and sped up to 100 miles per hour. The Acura exited at Truxel Road, ran a red light, made turns and drove over speed bumps at 50 miles per hour, ran a stop sign, spun out of control, and came to rest on a sidewalk.

Defendant got out of the car and ran, but the officers chased him down and placed him in handcuffs.

Defendant was agitated, yelled obscenities, kicked, and tried to pull away. He said he was going to put up a fight, the officers were "going to kill him tonight." At the patrol car, defendant suddenly slammed his head into the trunk. The officers tried to apply leg restraints, but defendant continued to resist and threatened to kill one of the officers. The officers applied pepper spray to defendant's face in order to secure the leg restraints. They then flushed his eyes with water and took him to the hospital. Defendant tried to spit on the officers and continued to threaten them. At the jail, defendant continued his uncooperative and threatening behavior.

An open bottle of alcohol was found in the Acura, and the passenger smelled of alcohol; defendant was not charged with driving under the influence.

The jury found defendant guilty on counts one, two, three, and six (evading a police officer with reckless driving; threatening injury to an officer; resisting an officer; and threats to commit a crime resulting in death or great bodily injury). The jury found defendant not guilty as to count four (vandalism) and deadlocked on count five (threat of injury to an officer), resulting in a mistrial on count five.

In a bifurcated trial, the jury found true the prior conviction and prior prison term allegations.

The trial court sentenced defendant to prison for 87 years (25 years to life on count one; consecutive terms of 25 years to life on counts two and six; 25 years on count three, stayed under § 654; plus 12 years on the enhancement allegations).

## DISCUSSION

I. *Jury Selection*

Defendant contends the trial court denied his state and federal rights to due process, equal protection, and trial by jury, when the court denied defendant's motion under *Batson v. Kentucky* (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712], and *People v. Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], in which the defendant claimed the prosecutor exercised a peremptory challenge against the sole African-American prospective juror due to bias against African-Americans. We shall conclude there is no basis for reversal.

The prospective juror, a pastor of a Baptist church in Oak Park, said he deals with homeless people, and his wife works in the county welfare department. When asked by the prosecutor, "Do you have a lot of situations and times when you deal with young men maybe [defendant's] age [in] your role as a pastor with men his age," the pastor said he "[deals] with a lot of homeless people and a lot of individuals that come through the church." The pastor stated it would not be difficult for him to sit in judgment of someone else. His religious beliefs would not interfere with his ability to vote for a guilty verdict. He previously served as a juror in a criminal case 12 years earlier, in which the jury reached a decision.

The pastor was the sole African-American among the prospective jurors. The only other African-American on the venire had been excused by the judge for hardship.

When the prosecutor excused the pastor, defendant made his *Batson/Wheeler* motion, noting defendant is Black and arguing the pastor did not respond any differently to voir dire questions than the other jurors.

The trial court said defendant had made a prima facie case, and the court asked the prosecutor to explain her reasoning.

The prosecutor said the pastor's "ethnicity had nothing to do with the People's decision to exercise a peremptory challenge in this particular case. [The prospective juror] is a pastor of a Baptist church in Oak Park, which is an area known by me to have a lot of people who are underprivileged and who live there.

"He deals with homeless, and he's in a situation where not only is his occupation one of forgiveness and sympathy, that's the main gist of it, he's in an occupation where he deals with underprivileged people who are homeless

who require counseling and who he talks to. And I believe that that would put him in a situation where he would be more sympathetic towards a defendant, even though there's a jury instruction right on point that they're not supposed to take into consideration sympathy for a defendant.

"I also took into consideration that his wife works for the welfare department. This has nothing to do with [the pastor's] ethnicity. I don't know what the ethnicity of his wife is. But between the two, the[ir] combination of occupations is very sympathetic towards—I don't want to use the word 'underdog,' just towards people who may be in a situation where people are trying to bring charges against them.

"And I do not want to sit through a trial thinking about, you know, whether or not I made the right decision in kicking a particular juror from the panel [*sic*]. That would take away from my concentration on the case, and I didn't feel comfortable having him sitting as a juror."

Defense counsel argued the prosecutor's reasoning was pretextual, defendant was not homeless or underprivileged, and the prosecutor's reference to Oak Park's population being underprivileged was just another way of saying that Oak Park has a predominantly Black neighborhood.

The trial court stated the prosecutor's point was that the pastor "might have sympathy for those who find themselves in a disadvantaged situation such as being charged with a crime and being on trial for that. [¶] All of the things that the People pointed out about [the pastor], those things were pointed out about a prospective juror who was a [W]hite pastor and worked in all those situations and circumstances with a prosecutor exercise of a peremptory.[2] Most people would understand the peremptory is being exercised because there was a pastor who worked with people who are underprivileged, who are down and out, however you want to put it, people that are faced with hard situations. And the pastor has sympathy towards those people, want[s] to help make their lives better. And no one would consider that the prosecutor is being unreasonable in removing a [W]hite pastor or an Asian pastor or Hispanic pastor who is in that situation.

"The Court's unable to say that because the pastor is [B]lack, you can't exercise a peremptory when you would be able to properly when the person is [W]hite under these circumstances."

The trial court accordingly denied defendant's motion.

---

[2] Defendant notes there was no White minister in the jury venire, and it appears the court was speaking hypothetically, that the prosecutor would excuse a White pastor under the same circumstances.

■ A prosecutor's use of peremptory challenges to strike prospective jurors on the basis of racial bias violates the criminal defendant's rights to equal protection and to trial by a jury drawn from a representative cross-section of the community. (*People v. Bell* (2007) 40 Cal.4th 582, 596 [54 Cal.Rptr.3d 453, 151 P.3d 292].) If the defendant makes a prima facie case of racial bias, the trial court asks the prosecution to explain its reasoning, and if a race-neutral explanation is tendered, the trial court must decide whether racial discrimination has been shown. (*Ibid.*)

On appeal, we review the trial court's ruling under a substantial evidence standard, giving deference to the trial court's sincere and reasoned effort to evaluate the prosecutor's reasons. (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1126 [124 Cal.Rptr.2d 373, 52 P.3d 572].)

■ Here, substantial evidence supports the trial court's decision that the prosecutor's reasons for excusing the pastor were legitimate and race neutral. The pastor is in the business of forgiveness, and the prosecutor was not required to accept the pastor's assurance that he could find someone guilty.

Defendant argues he was not homeless or underprivileged. Defendant thus continues to miss the point. "Underprivileged" in this context was not limited to economic circumstances but included being on the defense side of a government prosecution.

Defendant cites authority that, although the exclusion of a single prospective juror may be the product of improper group bias, as a practical matter the challenge of one or two jurors can rarely suggest a pattern of impermissible exclusion. (*People v. Bell, supra,* 40 Cal.4th at p. 598 [upheld trial court's determination that defendant failed to make prima facie case of discrimination].) Defendant develops no argument based on *Bell.*

We conclude defendant fails to show grounds for reversal with respect to his *Batson/Wheeler* motion.

II. *Prior Serious Felony*

Defendant argues the evidence is insufficient to support the jury's finding that his prior conviction for assault on a peace officer under section 245, subdivision (c) (§ 245(c)), was a serious felony within the meaning of the three strikes law. We disagree with defendant.

Section 245(c), states: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years."

The information alleged a 1997 conviction for violation of section 245(c), without describing the offense.

The prosecutor presented an abstract of judgment showing that in 1997 defendant was convicted, pursuant to a plea, of "ADW NOT FIREARM" under "PC 245(C)." The prosecutor also presented fingerprint evidence that defendant was the person referenced in the abstract of judgment.

The jury found true that defendant was convicted in 1997 of a serious felony, section 245(c).

On appeal, defendant notes assault under section 245 may be committed in two ways—with a deadly weapon, or with force likely to cause great bodily injury. According to defendant, only an assault with a deadly weapon constitutes a serious felony for three strikes sentencing.

■ We reject the People's concession of this point, because defendant's point is without merit where, as here, the victim of the assault was a peace officer under section 245(c). Under section 1192.7, subdivision (c)(31), *any* assault on a peace officer in violation of section 245(c) constitutes a serious felony under section 1192.7, regardless of whether a deadly weapon was used. Thus, section 1192.7, subdivision (c)(31), says " 'serious felony' " includes "assault with a deadly weapon, firearm, machinegun, assault weapon, or semiautomatic firearm *or* assault on a peace officer or firefighter, in violation of Section 245." (Italics added.) The reference to assault on a peace officer in the second half of subdivision (c)(31) of section 1192.7 is not limited to assault with a deadly weapon, as is the reference to assault in the first half of the subdivision. Accordingly, *any* assault on a peace officer in violation of section 245 is a serious felony. As indicated, section 245(c) states: "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, *or* by any means likely to produce great bodily injury upon the person of a peace officer or firefighter . . . shall be punished by imprisonment in the state prison . . . ." (Italics added.)

■ Thus, an assault on a peace officer in violation of section 245(c) is a serious felony under the three strikes law regardless of whether a deadly weapon was used.

The cases cited by defendant are inapposite because they involved assaults on civilians under subdivision (a) of section 245. (*People v. Rodriguez* (1998) 17 Cal.4th 253 [70 Cal.Rptr.2d 334, 949 P.2d 31]; *People v. Banuelos* (2005) 130 Cal.App.4th 601, 605 [30 Cal.Rptr.3d 315] [§ 245, subd. (a), assault by means likely to cause great bodily injury is not a serious felony unless it also involves the use of a deadly weapon or actually results in the personal infliction of great bodily injury].)

Defendant seeks to rely on *People v. Banuelos, supra*, 130 Cal.App.4th at page 605, because it held that a notation in an abstract of judgment referring to the crime as "ASSAULT GBI W/DEADLY WEAPON" was ambiguous as to whether (1) the defendant committed the assault both by means of force and with a deadly weapon, or (2) the notation was merely an abbreviation of the criminal conduct covered by section 245, subdivision (a)(1). However, this ambiguity mattered in *Banuelos* because the victim was a civilian. As we have explained, assault on a peace officer in violation of section 245(c) is a serious felony regardless of whether or not a deadly weapon was used.

Even assuming for the sake of argument that a deadly weapon is required for the section 245(c) violation to constitute a serious felony, the evidence in this case was not ambiguous as it was in *Banuelos*. Here, the evidence showed the assault was with a deadly weapon, because the abstract of judgment said "ADW NOT FIREARM." *People v. Luna* (2003) 113 Cal.App.4th 395 [6 Cal.Rptr.3d 539], held the notation "ASSLT GBI W/DL WPN" in an abstract of judgment constituted substantial evidence that the assault was committed with a deadly weapon. (*Id.* at pp. 398–399.) A similar result applies here. "ADW NOT FIREARM" means "assault with a deadly weapon that was not a firearm." We disagree with defendant's view that the notation in this case, "ADW NOT FIREARM," was ambiguous as to use of a deadly weapon.

We conclude substantial evidence supports the jury's finding that defendant's prior assault conviction was a serious felony under section 1192.7.

We conclude defendant fails to show grounds for reversal of the judgment.

## DISPOSITION

The judgment is affirmed.

Nicholson, J., and Cantil-Sakauye, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 23, 2008, S164228.