NEEDHAM, J.
*1023 Based on his acceleration of a stolen automobile toward a police officer, appellant C.D. was found to have committed two counts of violating Penal Code section 245, subdivision (c),[1] which penalizes the assault of a peace officer "with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury." We conclude that one of these counts must be reversed because unlike section 245, subdivision (a)(1)-(4), which currently divides aggravated assault not involving a peace officer into four different crimes that may support separate convictions, section 245, subdivision (c), describes a single offense that can be committed two separate ways. We also reject appellant's argument that the evidence was insufficient to support even one true finding of *362 assault under section 245, subdivision (c), and conclude the trial court properly exercised its discretion when ruling on appellant's motion to disclose police personnel records under Pitchess v. Superior Court (1974) 11 Cal.3d 531, 113 Cal.Rptr. 897, 522 P.2d 305 ( Pitchess ).
I. BACKGROUND
On July 5, 2015, San Pablo Police Department Officer Niemi was patrolling the 1600 block of 16th Street in San Pablo and determined that an Acura parked on the street had been stolen. Appellant, who was driving the Acura, pulled it away from the curb and into the middle of a caravan of three cars. Officer Niemi followed in his marked patrol car as the cars in the caravan each stopped at a stop sign and turned right onto Bush Avenue, travelling westbound. The cars stopped again at a stop sign at the intersection of Bush Avenue and Rumrill Boulevard. Niemi pulled his patrol car into the eastbound lane of Bush Avenue facing against traffic so he could get a better visual of the stolen Acura, and stopped next to the third (last) car of the caravan. He got out and stood next to his driver's side door.
*1024 Officers Hearn and Dimercurio arrived on the scene in separate marked patrol cars. Traveling in the opposite direction in the eastbound lane of Bush Avenue, Hearn stopped his patrol car parallel to the first of the three vehicles in the caravan, a red SUV, then got out and stood inside his open driver's side door. There appeared to be about seven to eight feet of space between Hearn's patrol car and the red SUV. Dimercurio parked behind Hearn's vehicle and got out, and all of the officers activated the lights of their patrol cars.
Officer Hearn pointed his gun at appellant and shouted commands at him. Appellant looked to the left and right, turned his steering wheel to the left, stepped on the gas pedal and, accelerating to about 20 to 25 miles per hour, drove the Acura through the gap between Officer Hearn's patrol car and the SUV. Officer Niemi saw the left front fender of the Acura strike the driver's door of Hearn's patrol car as Hearn "turned his back towards the vehicle and pushed himself up against the frame of the car as the driver door closed on his body."
Officer Hearn fired several shots at appellant, and the Acura came to rest after driving over a curb and hitting a chain link fence. One of the shots hit appellant in the head and appellant lost an eye as a result. Hearn was not injured during the incident, and no documented repairs were made to the patrol car he was driving.
The district attorney filed a petition under Welfare and Institutions Code section 602, subdivision (a), alleging appellant should be continued as a ward of the juvenile court based on his commission of three offenses: (1) assault with a deadly weapon upon a peace officer under section 245, subdivision (c) ; (2) assault upon a peace officer by means of force likely to produce great bodily injury under section 245, subdivision (c) ; and (3) taking or driving a vehicle without the owner's permission under Vehicle Code section 10851, subdivision (a). Both assault counts were based on the act of driving the stolen Acura toward Officer Hearn.
At the contested jurisdictional hearing, appellant presented evidence designed to show there was no assault against Officer Hearn because the Acura did not actually strike the door of his patrol car and because there had been "ample room" for the Acura to safely pass between the patrol car and the red SUV. The trial court found all three counts true, stating "[t]he evidence is abundantly clear that [appellant] jerked the steering wheel to the left and *363 accelerated, and there's no way that action could point at anything else but directly at Officer He[a]rn as he accelerated. [¶] He then adjusted, it appears, and may have tried to go through the gap, but in that first second, he was pointed directly at officer He[a]rn with a weapon that is a deadly weapon and *1025 with [the] ability to cause great bodily injury. In that moment, the assault was committed. [¶] .... [¶] I don't know whether he struck that door, and there's different arguments that can be made. But I'm absolutely convinced that he came very close to the door the officer was behind." Appellant was committed to the Department of Juvenile Justice for a maximum period of six years eight months.
II. DISCUSSION
A. Section 245(c) Describes a Single Offense
Section 245, subdivision (c), provides, "Any person who commits an assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter, and who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer is engaged in the performance of his or her duties, shall be punished by imprisonment in the state prison for three, four, or five years." Appellant was found to have committed one count of assault with a deadly weapon under section 245, subdivision (c), and one count of assault by means of force likely to cause great bodily injury under section 245, subdivision (c), based on the same act of driving the stolen Acura toward Officer Hearn. Appellant argues that only one count should have been found true because section 245, subdivision (c), defines a single offense of aggravated assault, which is committed when the defendant uses a deadly weapon other than a firearm or some other means likely to produce great bodily injury. We agree.
Section 954 provides in relevant part, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts. ... The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged." Recently, our Supreme Court held "[t]he most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct." ( People v. Vidana (2016) 1 Cal.5th 632, 650, 206 Cal.Rptr.3d 556, 377 P.3d 805 ( Vidana ).)
Whether a statute defines different offenses or merely different ways of committing the same offense "properly turns on the Legislature's intent in *1026 enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." ( People v. Gonzalez (2014) 60 Cal.4th 533, 537, 179 Cal.Rptr.3d 1, 335 P.3d 1083 ( Gonzalez ).) Several recent decisions have examined the circumstances in which a statute (or statutes) will support multiple convictions.
In Gonzalez , supra , 60 Cal.4th at 533, 179 Cal.Rptr.3d 1, 335 P.3d 1083, the defendant had sexually assaulted a woman who had been rendered unconscious by intoxication. The court considered whether he could be properly convicted of both oral copulation of an unconscious person under *364 section 288a, subdivision (f), and oral copulation of an intoxicated person under section 288a, subdivision (i). The court concluded the answer was yes. ( Gonzalez , at p. 536, 179 Cal.Rptr.3d 1, 335 P.3d 1083.) Key to this result was the structure of section 288a, in which subdivision (a) defined oral copulation in general terms and the remaining subdivisions "define various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." ( Gonzalez , at p. 539, 179 Cal.Rptr.3d 1, 335 P.3d 1083.)
In People v. White (2017) 2 Cal.5th 349, 212 Cal.Rptr.3d 376, 386 P.3d 1172 ( White ), the court extended the reasoning of Gonzalez to the statute defining rape and upheld dual convictions of rape of an intoxicated person and rape of an unconscious person under sections 261, subdivisions (a)(3) and (a)(4). The court overruled People v. Craig (1941) 17 Cal.2d 453, 110 P.2d 403, "to the extent it held that the different subdivisions of former section 261 'merely define the circumstances under which an act of intercourse may be deemed an act of rape; they are not to be construed as creating several offenses of rape based upon that single act.' " The court in White acknowledged structural differences between section 261 and section 288a, the oral copulation statute that had been analyzed in Gonzalez , but concluded the rape statute was substantively parallel. ( White , at p. 359, 212 Cal.Rptr.3d 376, 386 P.3d 1172.) "We see no suggestion that the Legislature intended, and no reason it might have intended, a different rule for rape than exists for oral copulation[.]" ( Id . at p. 357, 212 Cal.Rptr.3d 376, 386 P.3d 1172.)
In Vidana , supra , 1 Cal.5th at p. 649, 206 Cal.Rptr.3d 556, 377 P.3d 805, the court held that grand theft by larceny under section 487, subdivision (a), and embezzlement under section 503 are "different statements of the same offense." It reached this result notwithstanding that separate code provisions were involved, based on a comprehensive review of California's theft statutes including section 490a, which states " '[w]herever any law or statute of this state refers to or mentions larceny, embezzlement or stealing, said law or statute shall hereafter be read and interpreted as if the word 'theft' were substituted therefore.' "
*1027 Vidana , supra , at p. 641, 206 Cal.Rptr.3d 556, 377 P.3d 805.) "Although the terms of section 490a are awkward in their literal application, the obvious intent of this statute ... was to create a single crime of theft." ( Id . at p. 648, 206 Cal.Rptr.3d 556, 377 P.3d 805.)
Finally, in In re Jonathan R. (2016) 3 Cal.App.5th 963, 968-969, 208 Cal.Rptr.3d 159 ( Jonathan R. ), the court reviewed dual assault convictions under section 245, subdivision (a) , and determined the defendant could be separately convicted of both an assault with a deadly weapon under section 245, subdivision (a)(1), and assault with a deadly weapon by means likely to produce great bodily injury under section 245, subdivision (a)(4). ( Jonathan R. , at pp. 967-971, 208 Cal.Rptr.3d 159.)[2] Taking *365 guidance from the Supreme Court's decision in Gonzalez , the Jonathan R. court explained, "The statutory structure of section 245 [subdivision (a) ] is indistinguishable from that of section 288a. Each subdivision of section 245 [subdivision (a) ] sets out different circumstances under which a person can commit aggravated assault, and each subdivision specifies the punishment applicable to those circumstances." ( Jonathan R. , at p. 970, 208 Cal.Rptr.3d 159.) Nonetheless, the court found dual convictions under section 245, subdivision (a)(1) and (a)(4) to be unsustainable on a different ground: assault by means likely to produce great bodily injury is a lesser included offense of assault with a deadly weapon, and a defendant may not be convicted of both a greater crime and a lesser included offense based on the same conduct. ( Jonathan R. , at p 972, 208 Cal.Rptr.3d 159.)
The People urge us to follow the Jonathan R. court's analysis of multiple convictions, noting that the only substantive difference between section 245, subdivision (c), and section 245, subdivision (a)(1) and (a)(4), is that the former penalizes an aggravated assault when the victim is a peace officer. They argue, "If two convictions of assault can be sustained based on one act when the victim is a regular citizen, then surely the same must be true when the *1028 assault is committed against a peace officer or firefighter, whom the Legislature has deemed is entitled to even greater protection than the regular citizen, as evidenced by the increased punishment." While superficially appealing, the problem with the People's argument is that subdivision (c) of section 245 has a different structure, and a different legislative history, than subdivision (a).
Prior to an amendment to the statute in 2011, section 245, subdivision (a), had set forth assault with a deadly weapon and assault by means of force likely to produce great bodily injury as "alternative provisions within a single statutory subdivision" using language that was essentially the same as section 245, subdivision (c). ( Jonathan R. , supra , 3 Cal.App.5th at p. 972, 208 Cal.Rptr.3d 159.)[3] That language was *366 construed by the Supreme Court to "define[ ] only one offense, to wit, 'assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury' " ( In re Mosley (1970) 1 Cal.3d 913, 919, fn. 5, 83 Cal.Rptr. 809, 464 P.2d 473 ( Mosley )). The Jonathan R. decision recognized as much, explaining that under the pre-2011 version of section 245, subdivision (a), "[u]se of a deadly weapon other than a firearm or force likely to produce great bodily injury were therefore two means to commit the same offense, rather than different offenses." ( Jonathan R. , at p. 972, 208 Cal.Rptr.3d 159.)
In 2011, however, the two variants of aggravated assault under former section 245, subdivision (a)(1), were placed in separate paragraphs of subdivision (a). (Stats. 2011, ch. 183, § 1.) The reason for the change was to make it easier going forward to determine whether a defendant's prior convictions for aggravated assault under section 245, subdivision (a), involved conduct subjecting the defendant to certain recidivist provisions, because enhancements such as the Three Strikes law applied to prior assault convictions only when those convictions involved the use of a deadly weapon. ( Jonathan R. , supra , 3 Cal.App.5th at p. 971, 208 Cal.Rptr.3d 159 ; see *1029 People v. Banuelos (2005) 130 Cal.App.4th 601, 604-607, 30 Cal.Rptr.3d 315.) There was no need to similarly amend section 245, subdivision (c), because an aggravated assault against a peace officer is a serious felony and qualifies as a "strike" regardless of whether a deadly weapon was used. (§ 1192.7, subd. (c)(31); People v. Semien (2008) 162 Cal.App.4th 701, 709-710, 75 Cal.Rptr.3d 880.)
The defendant in Jonathan R. argued unsuccessfully that in light of the reason for the 2011 amendment to section 245, subdivision (a), the separation of assault with a deadly weapon and assault by means likely to produce great bodily injury was a " 'technical, nonsubstantive' change" and "no separate offense was created by the amendment because the two clauses specified different methods of committing a single offense before the amendment and the Legislature expressed no intent to change that situation in enacting the amendment." ( Jonathan R. , at p. 971, 208 Cal.Rptr.3d 159.) The court rejected the claim: "The rationale of Gonzalez precludes such an analysis. The court held, in effect, that the Legislature is deemed to have intended to create separate offenses whenever a statute isolates violations with separate elements and punishments in separate subdivisions. Under Gonzalez , this statutory structure was held to be an element of the plain language of the statute, and that language was held to be unambiguous in creating separately convictable offenses. Given the absence of ambiguity, expressions of intent in a statute's legislative history are irrelevant to its interpretation. [Citation.]" ( Jonathan R. , at p. 971, 208 Cal.Rptr.3d 159.)
Unlike section 245, subdivision (a), which now divides assault with a deadly weapon and assault by means likely to produce great bodily injury into separate subparagraphs, section 245, subdivision (c), continues to set forth the two variants of aggravated assault against a peace officer within a single clause. It is structurally the same as former section 245, subdivision (a), before the 2011 amendment, which was construed *367 by our Supreme Court to state a single offense. ( Mosley , supra , 1 Cal.3d at p. 919, fn. 5, 83 Cal.Rptr. 809, 464 P.2d 473.) Aggravated assault against a peace officer under section 245, subdivision (c), remains a single offense, and multiple violations of the statute cannot be found when they are based on the same act or course of conduct.
We are not persuaded by the People's argument that a different result is compelled by the Supreme Court's recent decision in People v. Page (2017) 3 Cal.5th 1175, 225 Cal.Rptr.3d 786, 406 P.3d 319 ( Page ). The issue in Page was not the propriety of dual convictions under a single statute, but whether a defendant convicted under Vehicle Code section 10851 was eligible for resentencing for a misdemeanor offense under section 1170.18, which enacted as part of Proposition 47. ( Id ., at pp. 1179-80, 225 Cal.Rptr.3d 786, 406 P.3d 319.) The Supreme Court held that certain convictions under Vehicle Code section 10851 do qualify for treatment under Proposition 47, reasoning as follows: (1)
*1030 section 10851 may be violated in two different ways, by either taking a vehicle or driving it without the owner's consent; (2) newly-enacted section 490.2 (which is part of Proposition 47) mandates misdemeanor punishment for a defendant who "obtain[ed] any property by theft" when its value was $950 or less; (3) when a defendant was convicted under the theft variant of section 10851, section 490.2 applies and mandates misdemeanor punishment. ( Id ., at pp. 1182-86, 225 Cal.Rptr.3d 786, 406 P.3d 319.) The court in Page did not conclude that Vehicle Code section 10851 creates two separate offenses, as the People suggest, but refers instead to the "theft and non-theft forms " of that crime, strongly suggesting that the Court views the provision as creating a single offense that could be committed in two different ways. ( Id ., at pp. 1182-83, 225 Cal.Rptr.3d 786, 406 P.3d 319.) Nothing in Page suggests it would be appropriate for a defendant to suffer two convictions under Vehicle Code section 10851 based on a single, continuous instance of taking and driving a vehicle.
We will therefore order the judgment modified to reverse one of the two findings under section 245, subdivision (c). This will not affect appellant's maximum confinement time because the juvenile court concluded that the time attributable to one assault count was subject to a stay under section 654.
B.-C.**
III. DISPOSITION
The court's true finding under count 2, of assault by means of force likely to produce great bodily injury, is reversed. The judgment is otherwise affirmed.
We concur.
JONES, P.J.
SIMONS, J.

Statutory references are to the Penal Code unless otherwise indicated.

In its current form, section 245, subdivision (a), provides as follows: "(a)(1) Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment. [¶] (2) Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment. [¶] (3) Any person who commits an assault upon the person of another with a machine gun, as defined in Section 16880, or an assault weapon, as defined in Section 30510 or 30515, or a [.]50 BMG rifle, as defined in Section 30530, shall be punished by imprisonment in the state prison for 4, 8, or 12 years. [¶] (4) Any person who commits an assault upon the person of another by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment."

"For much of the first half of the last century, [section 245 ] read, ' "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison ... , or in a county jail ... , or by fine ..., or by both such fine and imprisonment." ' [Citations.] In 1961, this provision was designated subdivision (a), and a subdivision (b) was added separately criminalizing aggravated assault against a peace officer. [Citation.] In addition to other statutory changes to section 245 not pertinent here, subdivision (a) was later split into two parts, dividing the crime into (1) assault with a deadly weapon other than a firearm or by force likely to produce great bodily injury, and (2) assault with a firearm. The latter imposed the new requirement of a minimum six-month jail term. [Citations.] In 1989, subdivision (a)(3) was added to section 245, specifying the crime of assault with a machine gun or assault weapon, which carried a mandatory prison term, unlike the other provisions of subdivision (a). [Citation.] Finally, in 2011, subdivision (a)(1) was split into the crimes of assault with a deadly weapon other than a firearm, which remained subdivision (a)(1), and assault by force likely to produce great bodily injury, which became subdivision (a)(4)." (Jonathan R. , supra , 3 Cal.App.5th at pp. 967-968, 208 Cal.Rptr.3d 159.)

See footnote *, ante .