Filed 4/8/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JOSHUA CORRIGAN,<br><br>        Defendant and Appellant. | A154051<br><br>(Mendocino County<br>Super. Ct. No.<br>SCUK-CRCR-14-80086-002) |

After a shed in which he was manufacturing drugs exploded, defendant Joshua Corrigan pleaded no contest to four charges, including one count of unlawfully causing a fire that caused an inhabited structure or inhabited property to burn under Penal Code[1] section 452, subdivision (b) and one count of unlawfully causing a fire of a structure or forest land under subdivision (c) of that statute. The trial court sentenced him to seven years in prison, including a one-year term for the first section 452 conviction and a stayed two-year term for the other. On appeal, Corrigan contends, and the Attorney General concedes, that under section 954 he could be convicted of either of these counts, but not both, because they were based on a single fire. Although we agree with the parties that the convictions were based on the same act or course of conduct, we conclude that both convictions were nonetheless authorized under section 954. We therefore affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

# I.
## FACTUAL AND PROCEDURAL
### BACKGROUND

Corrigan stored butane and other items in a wooden shed on an acquaintance's Ukiah property for the purpose of manufacturing "butane honey oil," a form of concentrated cannabis.[2] (See *People v. Bergen* (2008) 166 Cal.App.4th 161, 164.) On November 5, 2014, another friend stopped by the shed to purchase marijuana from Corrigan. When Corrigan lit a cigarette, the shed exploded, burning both men. An assault rifle was later located underneath the shed.

After the preliminary hearing, which did not occur until almost three years later, Corrigan was charged with four felony counts: unlawfully causing a fire that caused an inhabited structure or inhabited property to burn, unlawfully causing a fire of a structure or forest land, unlawfully manufacturing butane honey oil, with an accompanying allegation that he did so while armed, and possession of an assault rifle.[3] He pleaded no contest to all four counts under an open plea for which his maximum exposure was nine years and eight months in prison.

In March 2018, the trial court sentenced Corrigan to a total term of seven years in prison, composed of a term of five years for unlawfully manufacturing butane honey oil, a consecutive term of one year for doing so while armed, and a consecutive term of one year for unlawfully causing a fire at an inhabited property. A two-year term for the count of unlawfully causing a fire of property and a two-year term for the count of possession of an assault rifle were imposed and stayed.

Corrigan appealed but did not seek a certificate of probable cause. He then sought permission in this court to seek a belated certificate of probable cause. The Attorney

---

[2] The facts in this paragraph are drawn from the transcript of the preliminary hearing, which Corrigan stipulated provided the factual basis for his plea.

[3] The charges were brought under sections 452, subdivisions (b) (fire causing inhabited structure or inhabited property to burn) and (c) (fire of structure or forest land), 30605, subdivision (a) (possession of assault rifle), and Health and Safety Code section 11379.6, subdivision (a) (manufacture of controlled substance). The arming allegation was made under section 12022, subdivision (a)(1).

General did not oppose relief, based on the constructive filing doctrine, and we granted the request. Corrigan then successfully sought a certificate of probable cause on the section 954 issue he now raises.

II.
DISCUSSION

Corrigan claims that he could be convicted of only one of the section 452 charges because subdivisions (b) and (c) constitute different statements of the same offense. Alternatively, he claims that multiple convictions were prohibited because subdivision (c) is a lesser included offense of subdivision (b). The Attorney General agrees with both contentions, but we agree with neither.

*A.      General Legal Standards.*

Under section 452, "[a] person is guilty of unlawfully causing a fire when he [or she] recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." Under subdivision (b), "[u]nlawfully causing a fire that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for two, three or four years, or by imprisonment in the county jail for not more than one year, or by a fine, or by both such imprisonment and fine." And under subdivision (c), "[u]nlawfully causing a fire of a structure or forest land is a felony punishable by imprisonment in the state prison for 16 months, two or three years, or by imprisonment in the county jail for not more than six months, or by a fine, or by both such imprisonment and fine."

As relevant here, section 954 provides, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged." But while under section 954 a defendant generally may be charged with and convicted of any number of offenses, section 654 prohibits the defendant from being punished under more than one provision

3

for a single act or omission.  Thus, "[w]hile section 654 prohibits multiple *punishment*," under section 954 "it is generally permissible to *convict* a defendant of multiple charges arising from a single act or course of conduct."  (*People v. Sanders* (2012) 55 Cal.4th 731, 736 (*Sanders*).)

In arguing that he could be convicted of only one of the section 452 charges, Corrigan relies on two exceptions to this general rule.  First, "a 'judicially created exception . . . prohibits multiple convictions based on necessarily included offenses.' " (*Sanders*, *supra*, 55 Cal.4th at p. 736.)  Second, although section 954 " 'authorizes multiple convictions for different or distinct offenses, [it] does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct.' " (*People v. Vidana* (2016) 1 Cal.5th 632, 650 (*Vidana*).)  The issue whether multiple convictions are permissible under section 954 is reviewed de novo.  (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.)

B.      *The Exception for Necessarily Included Offenses Does Not Apply.*

We begin by addressing the simpler issue of whether "[u]nlawfully causing a fire of a structure or forest land" under section 452, subdivision (c) is a necessarily included offense of "[u]nlawfully causing a fire that causes an inhabited structure or inhabited property to burn" under subdivision (b) of the statute.  To determine whether one offense is necessarily included in another for purposes of section 954, " 'a court should consider only the statutory elements.' [Citation.]  'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' [Citation.]  In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " (*Sanders*, *supra*, 55 Cal.4th at p. 737.)

Corrigan claims, and the Attorney General agrees, that "[t]he only difference between [subdivisions (b) and (c) of section 452] is the heightened requirement under subdivision (b) that the structure or property be inhabited."  We are not persuaded. Under the elements test, we consider the entire statutory provision describing the crime, not "the underlying facts of the case or the language of the accusatory pleading."

(*Sanders*, *supra*, 55 Cal.4th at p. 739.)  In doing so, we determine whether it is possible "[i]n the abstract" to violate one provision without violating the other.  (*Ibid.*; see also *People v. Ortega* (1998) 19 Cal.4th 686, 692.)  An application of this test to section 452 reveals that it is possible in the abstract to violate subdivision (b), which penalizes burning "an inhabited structure or inhabited property," without violating subdivision (c), which penalizes burning "a structure or forest land."  True enough, as the parties suggest, it is not possible to burn an inhabited structure under subdivision (b) without also burning a structure under subdivision (c).  But setting a fire that causes an inhabited vehicle, such as a camper, to burn violates subdivision (b) because a vehicle is property, yet it does not violate subdivision (c) because a vehicle is neither a structure nor forest land.  (See § 450, subd. (c) [defining "property"].)  Because it is therefore possible in the abstract to violate one provision without violating the other, the exception for multiple convictions of necessarily included offenses does not apply.

     C.     *The Two Subdivisions Define Different Offenses.*

Accordingly, we turn to consider whether the second exception applies on the basis that subdivisions (b) and (c) "define different offenses [instead of] merely describ[ing] different ways of committing the same offense," an issue that "properly turns on the Legislature's intent in enacting these provisions."  (*People v. Gonzalez* (2014) 60 Cal.4th 533, 537 (*Gonzalez*); see *Vidana*, *supra*, 1 Cal.5th at p. 650.)  We focus on the statutory language, giving the words " ' "a plain and commonsense meaning" ' " and construing them " ' " ' "in context, keeping in mind the nature and obvious purpose of the statute." ' " ' "  (*Gonzalez*, at p. 537; see *Vidana*, at p. 638.)

For reasons we shall explain, we conclude that the exception does not apply because subdivisions (b) and (c) define different offenses.  Our analysis is guided by three recent Supreme Court decisions that have considered whether analogous statutory schemes define different offenses.  The first one, *Gonzalez*, considered whether a defendant could be convicted under both subdivisions (f) and (i) of former section 288a

based on the same act.[4] (*Gonzalez*, *supra*, 60 Cal.4th at p. 536.) Subdivision (a) of former section 288a "defines oral copulation as 'the act of copulating the mouth of one person with the sexual organ or anus of another person.' Subdivision (f) provides: 'Any person who commits an act of oral copulation, and the victim is at the time unconscious of the nature of the act and this is known to the person committing the act, shall be punished by imprisonment in the state prison for a period of three, six, or eight years. . . .' Subdivision (i) provides: 'Any person who commits an act of oral copulation, where the victim is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused, shall be punished by imprisonment in the state prison for a period of three, six, or eight years.' " (*Gonzalez*, at p. 538.)

The Supreme Court characterized former section 288a as thus "defin[ing] what conduct constitutes the act of oral copulation" in subdivision (a) and then, in subdivisions (b) through (k), "defin[ing] various ways the act may be criminal. Each subdivision sets forth all the elements of a crime, and each prescribes a specific punishment. Not all of these punishments are the same. That each subdivision of [former] section 288a was drafted to be self-contained supports the view that each describes an independent offense, and therefore section 954 is no impediment to a defendant's conviction under more than one such subdivision for a single act." (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)

In the second case, *Vidana*, the Supreme Court held that larceny under section 484, subdivision (a) and embezzlement under section 503 are different statements of the same offense and cannot support multiple convictions based on the same act or course of conduct. (*Vidana*, *supra*, 1 Cal.5th at pp. 647-648.) After observing it was not definitive that "[l]arceny and embezzlement have different elements and neither is a lesser included offense of the other," the Court pointed out that the larceny statute also prohibited embezzlement. The Court further pointed out that, to the extent there was

---

[4] Former section 288a was recently amended and renumbered as section 287. (Stats. 2018, ch. 423, § 49.)

6

ambiguity, the legislative history of section 484 revealed an "obvious intent . . . to create a single crime of theft." (*Vidana*, at p. 648.) And lastly, the Court found it significant that "[l]arceny under section 484[, subdivision (a)] and embezzlement under section 503 also generally have the same punishment." (*Id.* at pp. 648-649.)

Finally, in the third case, *People v. White* (2017) 2 Cal.5th 349 (*White*), the Supreme Court applied *Gonzalez*—the case involving oral copulation under former section 288a—to hold that a defendant could be convicted of both rape of an intoxicated person under section 261, subdivision (a)(3) and rape of an unconscious person under section 261, subdivision (a)(4)(A) based on the same act or course of conduct. (*White*, at pp. 351-352.) In relevant part, section 261 provides: "(a) Rape is an act of sexual intercourse accomplished with a person not the spouse of the perpetrator, under any of the following circumstances: [¶] . . . [¶] (3) Where a person is prevented from resisting by any intoxicating or anesthetic substance, or any controlled substance, and this condition was known, or reasonably should have been known by the accused. [¶] (4) Where a person is at the time unconscious of the nature of the act, and this is known to the accused. As used in this paragraph, 'unconscious of the nature of the act' means incapable of resisting because the victim meets any one of the following conditions: [¶] (A) Was unconscious or asleep."

In *Gonzalez*, the Supreme Court had "distinguished *People v. Craig* (1941) 17 Cal.2d 453 (*Craig*), which . . . held that the different subdivisions of former section 261 do *not* define different offenses," on the basis that those subdivisions did not each include all the elements of the crime or prescribe specific and varying punishments. (*White*, *supra*, 2 Cal.5th at p. 354; *Gonzalez*, *supra*, 60 Cal.4th at p. 539.) In *White*, the Court went further and overruled *Craig*, concluding that the different subdivisions of section 261 define different offenses. (*White*, at p. 359.) The Court acknowledged that, unlike former section 288a and the statutes defining the two other "major sex offenses" of sodomy and sexual penetration, "[s]ection 261's subdivisions are not self-contained" in that the statute "defines and uses the word '[r]ape but once." (*White*, at p. 357.) But the Court determined that this structural difference did not "indicate[] a legislative intent to

7

permit multiple convictions for the various subdivisions concerning oral copulation, sodomy, or sexual penetration while forbidding multiple convictions for the otherwise analogous provisions of rape. *Substantively*, the provisions regarding the four major sex crimes parallel each other," because "[t]he conduct and mental state of the perpetrator and the characteristics of the victim that . . . transform these sexual acts into crimes are essentially identical." (*Ibid.*) As further support for its conclusion, the Court noted that "different sections of the Penal Code provide sentencing consequences that are different for some forms of rape than for others." (*Id.* at p. 358.)

In our case, Corrigan argues that subdivisions (b) and (c) of section 452 are different statements of the same offense by contrasting them to the provisions of former section 288a that *Gonzalez* addressed. He argues that unlike the *Gonzalez* provisions, the subdivisions here "are not self-contained" because neither of them "contains the necessary elements to convict a person for violating the statute. Notably missing . . . [is] the element[] that the defendant acted recklessly in causing the fire." (See *Gonzalez*, *supra*, 60 Cal.4th at p. 539.) This argument might have had more force before *White*: former section 288a, subdivision (a) merely defines what the *act* of "oral copulation" consists of, whereas the first portion of section 452 defines when a person is *guilty* of "unlawfully causing a fire," including the required mind state. But even if the various subdivisions of section 452 are not "self-contained" in this sense, *White* makes clear that this factor is not dispositive. (*White*, *supra*, 2 Cal.5th at p. 357.)

Instead, other aspects of section 452 lead us to conclude that, like the statutes at issue in *Gonzalez* and *White*, it sets forth different offenses rather than different statements of the same offense. Most significantly, each of the four subdivisions that prohibits an unlawfully-caused fire is limited to a particular result—"great bodily injury," the burning of "an inhabited structure or inhabited property," "a fire of a structure or forest land," and "a fire of property"—and sets forth a different punishment. (§ 452, subds. (a)-(d).) Thus, causing the burning of an inhabited structure or inhabited property causes a different type of injury, and exposes a defendant to a longer prison term, than does causing a fire of a structure or forest land. (§ 452, subds. (b) & (c).) These

8

characteristics strongly suggest that the two provisions define different offenses.  (See *In re Jonathan R.* (2016) 3 Cal.App.5th 963, 971 [interpreting *Gonzalez* to have "held, in effect, that the Legislature is deemed to have intended to create separate offenses whenever a statute isolates violations with separate elements and punishments in separate subdivisions"]; cf. *In re C.D.* (2017) 18 Cal.App.5th 1021, 1027-1029 [distinguishing *Jonathan R.* on basis of different statutory structure].)

In addition, as discussed above, subdivisions (b) and (c) "differ in their necessary elements . . . and neither offense is included within the other," also suggesting that they define separate offenses.  (*Gonzalez*, *supra*, 60 Cal.4th at p. 539.)  We recognize that, under *Vidana*, this factor is also not determinative, but in that case other factors that are absent here weighed in favor of concluding that the larceny and embezzlement provisions constitute different statements of the same offense, including that violations "generally have the same punishment."  (*Vidana*, *supra*, 1 Cal.5th at pp. 647-648.)  Moreover, *Vidana* involved another statute that equates "larceny, embezzlement or stealing" to "theft" (§ 490a), as well as a distinct expression of legislative intent to " 'consolidate[] the present crimes known as larceny, embezzlement and obtaining property under false pretenses, into one crime, designated as theft.' "  (*Vidana*, *supra*, 1 Cal.5th at p. 648.)  Neither party here has pointed us to any similarly clear expression of an intent for unlawfully causing a fire to be considered the same offense regardless of the resulting injury and despite the differing punishments.  Although the case law cited by the parties contains stray references to "the crime" or "the offense" of unlawfully causing a fire (e.g., *People v. Atkins* (2001) 25 Cal.4th 76, 87, 89), such use of the singular outside the section 954 context is of little significance.  (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 680 [" 'It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues before the court.  An opinion is not authority for propositions not considered.' "].)  For example, *White* held that section 261 defines multiple offenses for purposes of section 954, yet it is common to refer to "the crime" or "the offense" of rape.  (E.g., *People v. Brooks* (2017) 3 Cal.5th 1, 74; *People v. Lewis* (2009) 46 Cal.4th 1255, 1301.)

9

In short, we conclude that subdivisions (b) and (c) of section 452 define separate offenses and that neither is necessarily included in the other.  As a result, section 954 did not bar Corrigan's convictions under both provisions.

## III.
### DISPOSITION

The judgment is affirmed.

_____

Humes, P.J.


WE CONCUR:


_____

Margulies, J.


_____

Banke, J.


*People v. Corrigan* A154051

11

Trial Court:

Superior Court of the County of Mendocino


Trial Judge:

Hon. Cindee F. Mayfield


Counsel for Defendant and Appellant:

Patricia L. Brisbois, under appointment by the Court of Appeal


Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Gerald A. Engler, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

René A Chacón, Supervising Deputy Attorney General

Julia Y. Je, Deputy Attorney General


*People v. Corrigan*  A154051