FEUER, J.
*200 *469 Defendant Gregory Yusuke Shiga was convicted of aggravated arson, arson of a structure, arson of an inhabited structure, possession of flammable material, and second degree burglary arising from the 2011 burning down of St. John Vianney Catholic Church in Hacienda Heights. The jury also found true the special allegations the arson was caused by use of a device designed to accelerate the fire or delay ignition; Shiga proximately caused multiple structures to burn; and Shiga caused property damage exceeding $ 3.2 million. The trial court sentenced Shiga to an aggregate state prison term of 18 years to life.
In the published part of the opinion, we conclude the crimes of arson of an inhabited structure and arson of a structure under Penal Code section 451, subdivisions (b) and (c),[1] respectively, are forms of the same offense of *470 simple arson. Therefore, Shiga was erroneously convicted of both crimes. We reverse Shiga's convictions on counts 2 and 5 and remand for the People to elect on which count they want to proceed. Shiga also contends his convictions for arson of an inhabited structure and arson of a structure must be reversed because the offenses are lesser included offenses of aggravated arson under section 451.5. This contention lacks merit because a defendant can commit aggravated arson without necessarily committing arson, whether of a structure or an inhabited structure.
In the unpublished part of the opinion, we address Shiga's contentions concerning his competence to stand trial and to represent himself at trial. In Shiga's initial appeal, he argued the trial court erred in failing to conduct hearings on his competency to represent himself and to stand trial. We agreed, and remanded with instructions to the trial court to determine whether it was feasible retrospectively to determine Shiga's mental competency at the time of trial to represent himself and to stand trial, and if it was feasible, whether Shiga was competent in both respects. ( People v. Shiga (2016) 6 Cal.App.5th 22, 50, 210 Cal.Rptr.3d 611 ( Shiga I ).) On remand the trial court concluded a retrospective determination of Shiga's competency was feasible, and found that at the time of trial Shiga was both competent to represent himself and to stand trial. In this reinstated appeal, Shiga contends the trial court erred in both these determinations. We conclude it did not.
In the unpublished portion of the opinion we also address numerous sentencing issues. Shiga contends in his supplemental briefing, the People concede, and we agree the trial court erred in failing to stay his sentence on count 3 for possession of flammable material pursuant to section 654 because this offense was based on Shiga's possession of the flammable materials he used to commit aggravated arson, for which he was sentenced on count 1.
The People also concede and we agree the trial court erred when it imposed two 5-year enhancements under section 451.1, subdivision (a), on count 2 for the use of a device designed to accelerate the fire *201 (§ 451.1, subd. (a)(5)), and causing multiple structures to burn (§ 451.1, subd. (a)(4)), because subdivision (a) provides for a single enhancement "if one or more" of the bases for the enhancement are true. Therefore, if the People elect to proceed on count 2, the trial court may only impose one of the two enhancements under section 451.1. We also agree, as conceded by the People, the jury's true finding on count 1 as to the five-year enhancement under section 451.1, subdivision (a), must be reversed because the enhancement only applies to a conviction for a "felony violation of Section 451," not aggravated arson under section 451.5.
Finally, Shiga contends in his second supplemental briefing the enhancement the trial court imposed on count 2 under former section 12022.6, *471 subdivision (a)(4), for causing damage in excess of $ 3.2 million, must be stricken because the enhancement was repealed by its own terms, effective January 1, 2018. (Former § 12022.6, subd. (f).) We reject this contention because the repeal of former section 12022.6 does not apply retroactively.
We reverse Shiga's convictions for arson on counts 2 and 5. On remand the People should elect whether to proceed on count 2 under section 451, subdivision (c), or count 5 under section 451, subdivision (b), and the trial court should then enter a conviction on one of the offenses. We also reverse the jury's true finding on the section 451.1, subdivision (a), enhancement as to count 1. We remand for resentencing with directions for the trial court to stay Shiga's sentence on count 3 for possession of flammable material pursuant to section 654 and, if it reinstates Shiga's conviction on count 2, to impose only one 5-year sentence enhancement under section 451.1, subdivision (a).
FACTUAL AND PROCEDURAL BACKGROUND[2]
A. The Arson of the Church
On April 15, 2011 St. John Vianney Catholic Church in Hacienda Heights was set on fire. The blaze quickly spread to an adjacent rectory where two of the church's priests were sleeping. Both priests safely escaped the flames, but the firefighters were not able to save any portion of the church.
B. The Information
An amended information charged Shiga with aggravated arson (§ 451.5, subd. (a); count 1); arson of a structure ( § 451, subd. (c) ; count 2); possession of flammable material (§ 453, subd. (a); count 3); second degree commercial burglary (§ 459; count 4); and arson of an inhabited structure or property ( § 451, subd. (b) ; count 5). The information further alleged as to counts 1, 2, and 5, the arson was caused by use of a device designed to accelerate the fire or delay ignition (§ 451.1, subd. (a)(5)); as to counts 1 and 2 Shiga proximately caused multiple structures to burn (§ 451.1, subd. (a)(4)); and as to count 2 Shiga caused property damage exceeding $ 3.2 million in value (former § 12022.6, subd. (a)(4)).
C.-E.**
*472 F. The Trial
1. Jury selection**
2. The People's case
Investigators determined the fire burned and spread quickly due to use of an *202 accelerant. Rolls of toilet paper, which had been soaked in a medium petroleum distillate, were recovered from the debris. Because every other window on one side of the church was open, the fire was provided with oxygen, allowing it to grow at a faster rate.
Law enforcement spoke with several individuals who had encountered Shiga in the days and weeks preceding the fire. Shiga had visited his former grade school teacher about two weeks before the fire. He asked his teacher about a statue on the church's grounds depicting Christ's suffering on the cross. He told the teacher the Catholic Church had a lot of money and had done a lot of bad things, although it had not done bad things to him.
On April 6, 2011 Shiga entered a bible study team meeting at the church and questioned the congregants about the Catholic Church and the biblical basis for the pope's authority. The same day one of the priests saw Shiga walking down a hallway inside the priests' private rectory. Shiga walked past the priest and disappeared from view. The priest was surprised to see a stranger in the rectory and tried to find where he had gone. The priest located Shiga outside, staring at the roof of the church.
Midday on April 15, 2011 a church member who was decorating the church sanctuary saw Shiga in the sanctuary. Shiga was walking through the sanctuary aisles and appeared to be inspecting various alcoves and staring at the floor behind a number of statues.
At around 11:00 that night, Shiga was sitting in a white car parked in the church parking lot. Shiga approached three teenage boys who were skateboarding on the church property and told them to leave immediately. Shiga then returned to his car. The boys continued skateboarding. A few minutes later Shiga returned and again told the boys to leave the property. The boys left, then returned 20 to 30 minutes later and saw the church was in flames. Video surveillance footage from inside the church sanctuary showed Shiga lighting a fire on the left side of the altar at approximately 11:54 that night.
*473 Shiga was arrested on May 14, 2012. In a cell at the Norwalk sheriff's station, Shiga spoke to an undercover detective who was posing as an inmate. Transcripts of these conversations were admitted into evidence. Shiga told the detective he had "burned a church" and it "wasn't an accident." Shiga "didn't think people could get hurt." He believed the church's priests were doing bad things to children, and thought if he burned the church "word would get around and they'll stop."
Shiga explained to the detective he had stolen a weed sprayer with a backpack attachment, a household cleaning product, toilet paper, and a tiki torch from a home improvement store. Shiga used these tools to set the fire. Shiga went to the church the day of the fire and opened a number of windows so he could reenter that night after the doors were locked. Shiga also walked around the church, planning his crime. While surveying the church's interior, he noticed a statue, which he thought he could douse with oil to accelerate the spreading of the fire. Shiga also entered the rectory to investigate where the priests "do these bad things."
Shiga told the undercover detective he returned to the church that night. Some people were there outside the church, and he twice told them to leave. Once they left, Shiga entered the church through a window. Inside the church, Shiga "opened a couple windows" because "a fire needs air-oxygen-because it eats the oxygen." Shiga placed the toilet paper tissue on a large cross, as well as next to the drapes *203 on both sides. Shiga sprayed the toilet paper, ceiling, and "everything" with the weed killer. Then he lit the tiki torch and used it to set the toilet paper and drapes on fire. Shiga said he "lit all of them and [he] exited exactly the way [he] planned," through another window. With the fire burning, Shiga returned to his car and left.
Shiga was interviewed at the station by two investigating officers.[8] The trial court admitted a transcript of the interview into evidence. When asked whether he intended to kill the priests, Shiga responded that because the arson was at night, he did not think anyone would be hurt. Shiga had "no intention to hurt anybody." The officers asked Shiga why he had entered the church rectory. Shiga explained he wanted to see where the bad things occurred. He described his motivation for the arson stating, "if this happened, the news will spread and [the bad things] would stop."
Shiga asked the officers how long a trial takes and how to ask for a speedy trial. He asked whether a speedy trial means "that the court starts early." One of the officers told Shiga to ask his attorney if he wanted a speedy trial.
*474 When Shiga returned to his cell, he again spoke to the undercover detective. He said, "I'm going to try to do a speedy trial but I doubt ... the district attorney will allow me to do a speedy trial." This was because "[t]hey have DNA evidence on the toilet paper and stuff." Shiga added that "if [the jury] know[s] that my intention wasn't to hurt anyone some of them might say I'm not guilty. Because they're gonna know I was trying to do it for a good cause and they're gonna say ... I'm not guilty. And hopefully it's not a hung jury. Hopefully it's a decisive jury that will say I'm not guilty. If it's a hung jury I have to go back to trial again three times for a hung jury before ... the case gets closed."
3. Shiga's cross-examination of witnesses***
4. The defense case
Shiga did not make an opening statement or closing argument, and rested without testifying or calling any witnesses.
5. Shiga's conviction and sentence
On July 9, 2013 the jury convicted Shiga on all counts and found true all special allegations.[9] Shiga did not submit a sentencing memorandum. The only statement he made at his sentencing hearing was to note the date and time.
The trial court sentenced Shiga to an aggregate state prison term of 18 years to life. The court sentenced Shiga on count 1 for aggravated arson to an indeterminate term of 10 years to life, plus an additional five years (upper term) for the enhancement under section 451.1, subdivision (a)(5), for use of an accelerant. The court selected count 3 for possession of a flammable material as the base determinate term and imposed the upper term of three years. On count 2 for arson of a structure, the court imposed and stayed (§ 654) the upper term of six years, plus four years for the enhancement under former section 12022.6, subdivision (a)(4), the upper term of five years on the enhancement under *204 section 451.1, subdivision (a)(4), and the upper term of five years for the enhancement under section 451.1, subdivision *475 (a)(5), for a total of 20 years.[10] On count 4 for second degree burglary, the court imposed and stayed the upper term of three years. On count 5 for arson of an inhabited structure or property, the court imposed and stayed the upper term of eight years, plus the upper term of five years for the enhancement under section 451.1, subdivision (a)(5).
G.-H.†
DISCUSSION
A.-C.††
D. Arson Is Not a Lesser Included Offense of Aggravated Arson, But Shiga Was Improperly Convicted of Two Forms of Arson
Shiga contends his convictions for arson of an inhabited structure and arson of a structure under section 451, subdivisions (b) and (c), respectively, must be reversed because the offenses are lesser included offenses of aggravated arson under section 451.5.[15] This contention lacks merit. But Shiga was improperly convicted of two counts of arson under section 451, subdivisions (b) and (c), because section 451 defines a single crime of simple arson.
1. Arson is a single offense that may be committed in different ways
In support of his contention arson is a single offense, Shiga points to the language at the beginning of section 451, which provides, "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any *476 structure, forest land, or property."[16] The People contend arson is not a single offense, but rather, each subdivision creates a separate offense, including section 451, subdivision (b), which criminalizes "[a]rson that causes an inhabited structure or inhabited property to burn," and section 451, subdivision (c), which criminalizes "[a]rson of a structure or forest land." *205 To determine whether the subdivisions of section 451 set forth separate offenses or different ways of committing the same offense of simple arson, we look to the Legislature's intent as reflected in the language of the statute and, if the language permits more than one reasonable interpretation, we consider the legislative history. ( People v. Gonzalez (2014) 60 Cal.4th 533, 537, 539, 179 Cal.Rptr.3d 1, 335 P.3d 1083 ( Gonzalez ) [concluding oral copulation under former § 288a, subd. (f), prohibiting oral copulation of an unconscious person, and subd. (i), prohibiting oral copulation of an intoxicated person, describe separate offenses because "[e]ach subdivision sets forth all the elements of a crime, and each prescribes a specific punishment"]; see People v. White (2017) 2 Cal.5th 349, 351-352, 212 Cal.Rptr.3d 376, 386 P.3d 1172 ( White ) [considering legislative intent in concluding § 261, subd. (a)(3), prohibiting rape of intoxicated person, and (a)(4)(A), prohibiting rape of unconscious person, described separate offenses such that defendant may properly be convicted of both in the same proceeding]; People v. Vidana (2016) 1 Cal.5th 632, 650, 206 Cal.Rptr.3d 556, 377 P.3d 805 ( Vidana ) [relying on legislative history to conclude larceny under § 484, subd. (a), and embezzlement under § 503 are "different statements of the same offense"].)
As the Gonzalez court explained as to the defendant's multiple convictions for oral copulation, "It follows that the determination whether subdivisions (f) and (i) of [former] section 288a define different offenses or merely describe different ways of committing the same offense properly turns on the Legislature's intent in enacting these provisions, and if the Legislature meant to define only one offense, we may not turn it into two." ( Gonzalez, supra , 60 Cal.4th at p. 537, 179 Cal.Rptr.3d 1, 335 P.3d 1083.) To make this determination, " ' "[w]e *477 begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language 'in isolation.' [Citation.] Rather, we look to 'the entire substance of the statute ... in order to determine the scope and purpose of the provision .... [Citation.]' [Citation.] That is, we construe the words in question ' "in context, keeping in mind the nature and obvious purpose of the statute ...." [Citation.]' [Citation.] We must harmonize 'the various parts of a statutory enactment ... by considering the particular clause or section in the context of the statutory framework as a whole.' " ' [Citation.] 'If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative intent.' " ( Id. at pp. 537-538, 179 Cal.Rptr.3d 1, 335 P.3d 1083.)
The Supreme Court in Vidana, supra , 1 Cal.5th at page 648, 206 Cal.Rptr.3d 556, 377 P.3d 805, in considering whether larceny under section 484, subdivision (a), and embezzlement under section 503 are separate offenses, first noted the two sections have different elements and neither is a lesser included offense of the other. Further, each section defines the elements of the offense, and thus under Gonzalez the sections are "self-contained." ( Vidana , at p. 648, 206 Cal.Rptr.3d 556, 377 P.3d 805.) However, the court found the statutory scheme ambiguous because section 484, subdivision (a), also proscribes embezzlement. ( Vidana , at p. 648, 206 Cal.Rptr.3d 556, 377 P.3d 805.) Accordingly, the court looked to the legislative history, and concluded it showed the Legislature intended to create a single offense of theft, noting the 1927 amendment to section 484 " 'consolidate[d] the present crimes known as larceny, embezzlement and obtaining property under false pretenses, into one crime, *206 designated as theft.' " ( Vidana , at p. 648, 206 Cal.Rptr.3d 556, 377 P.3d 805.)
Here, in contrast to former section 288a at issue in Gonzalez , which sets forth the complete elements of each crime of oral copulation in the section's subdivisions,[17] the first sentence of section 451 defines the crime of *478 arson, applicable to all subdivisions, whereas the subdivisions specify the applicable penalties depending on the severity of the injury. For example, section 451, subdivision (a), provides that "[a]rson that causes great bodily injury is a felony punishable by imprisonment in the state prison for five, seven, or nine years." (See § 451, subds. (b) [arson of inhabited structure or property punishable by three, five, or eight years], (c) [arson of a structure or forest land punishable by two, four, or six years], (d) [arson of property with specific exceptions punishable by 16 months or two or three years].)
Further, under the People's theory that each subdivision is a separate offense, an arsonist could be punished for multiple offenses for lighting a single fire that burns an inhabited structure ( § 451, subd. (b) ) and an uninhabited structure ( § 451, subd. (c) ). But this would be inconsistent with section 451.1, subdivision (a)(4), which imposes a sentence enhancement where the arsonist causes more than one structure to burn. (§ 451.1, subd. (a)(4) ["[A]ny person who is convicted of a felony violation of Section 451 shall be punished by a three-, four-, or five-year enhancement if one or more of the following circumstances is found to be true: [¶] ... [¶] (4) The defendant proximately caused multiple structures to burn in any single violation of Section 451."].)
The legislative history also supports an interpretation of section 451 as criminalizing a single offense of simple arson. In 1979 Senate Bill No. 116 reorganized and consolidated multiple Penal Code sections relating to different forms of arson into section 451.[18] ( People v. Atkins (2001) 25 Cal.4th 76, 87, 104 Cal.Rptr.2d 738, 18 P.3d 660, citing Stats. 1979, ch. 145, §§ 1-3, 7 & 8.) The bill repealed former sections 447a (burning of a trailer coach or various dwellings), 448a (burning of barns, stables, public bridges, and other buildings), 449a (burning of vehicles, specified farm goods, and other personal property), 449b (burning of specified farm goods, railroad ties, phone poles, bridges, and other structures), 449c (burning of forest land, grain, and other property), 450a (arson with intent to defraud the insurer), 451a (attempted arson), and 451b (setting a fire in a detention facility). (Stats. 1979, ch. 145, §§ 1-5, 7 & 10.)
*207 *479 Notably, as the comments to the Senate Committee on Judiciary on Senate Bill No. 116 state, "Under this bill, a person would be guilty of arson when he [or she] [¶] 'willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land or property.' " (See Sen. Com. on Judiciary, Analysis on Sen. Bill No. 116 (1979-1980 Reg. Sess.) as amended Feb. 12, 1978, p. 2, underscoring omitted.) Further, treatment of section 451 's subdivisions as sentencing provisions is consistent with Senate Bill No. 116's amendment of section 12022.7, which provides a sentence enhancement for offenses in which the defendant personally inflicted great bodily injury, to exclude arson (see § 12022.7, subd. (g)), and the addition of the enhancement in section 451, subdivision (a), which does not require intent to cause great bodily injury. (See Sen. Com. on Judiciary, Analysis on Sen. Bill No. 116, at p. 5.) This change reflected the Legislature's intent to "raise the sentences for arson, depending upon the end result of the burning." (Id. at p. 3, underscoring omitted.)
We recognize our colleagues in the First Appellate District recently addressed a similar issue in concluding section 452, subdivision (b), for recklessly causing a fire to an inhabited structure or property, and subdivision (c), for recklessly causing a fire to a structure or forest land, defined separate offenses.[19] ( People v. Corrigan (Apr. 8, 2019, A154051) 34 Cal.App.5th 14, ----, 245 Cal.Rptr.3d 756, 2019 WL 1513202, *6 ( Corrigan ).) The Corrigan court relied on the Supreme Court's opinion in White, supra , 2 Cal.5th at page 357, 212 Cal.Rptr.3d 376, 386 P.3d 1172, to support its holding, noting the Supreme Court did not find "dispositive" that the subdivisions of section 261, defining rape, did not provide a "self-contained" definition of rape. ( Corrigan , at ----, 245 Cal.Rptr.3d 756, at p. *5.) But the arson statute differs from both the rape statute at issue in White and the oral copulation statute at issue in Gonzalez, supra , 60 Cal.4th at pages 537, 539, 179 Cal.Rptr.3d 1, 335 P.3d 1083, in that section 451, without consideration of its subdivisions, sets forth the complete elements of the crime of arson; former section 288a, *480 subdivision (a) (oral copulation), and section 261, subdivision (a) (rape), do not. Rather, the subdivisions of the sex offense statutes provide the elements necessary to make the sexual conduct a crime.[20] Further, the court in *208 Corrigan did not look at the " 'statutory framework as a whole' " or legislative history in concluding section 452 defined separate offenses of unlawfully causing a fire. (See Vidana, supra , 1 Cal.5th at pp. 637, 648, 206 Cal.Rptr.3d 556, 377 P.3d 805 ; Gonzalez , at pp. 537-538, 179 Cal.Rptr.3d 1, 335 P.3d 1083.) We have the benefit of both.
We conclude, in light of the statutory language in sections 451 and 451.1 and section 451 's legislative history, section 451 criminalizes a single offense of arson. (See In re V.V. (2011) 51 Cal.4th 1020, 1027, 125 Cal.Rptr.3d 421, 252 P.3d 979 [a person commits arson when he or she " 'willfully and maliciously sets fire to or burns or causes to be burned ... any structure, forest land, or property' "]; People v. Cole (2004) 33 Cal.4th 1158, 1218, 17 Cal.Rptr.3d 532, 95 P.3d 811 [trial court did not err in failing to instruct jury on offense of unlawfully setting a fire where defendant had argued it was lesser included offense of arson, explaining that "[a] person is guilty of arson when he 'willfully and maliciously sets fire to or burns ... any structure ... or property,' " but is guilty of unlawfully causing a fire when he " 'recklessly' " sets the fire under § 452].)
2. Shiga was improperly convicted of two forms of the single offense of arson
Section 954 provides, "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts .... The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged. ..." " 'The most reasonable construction of the language in section 954 is that the statute authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a *481 different statement of the same offense when it is based on the same act or course of conduct.' " ( Vidana, supra , 1 Cal.5th at p. 650, 206 Cal.Rptr.3d 556, 377 P.3d 805 [defendant could not be convicted of both grand theft by larceny and embezzlement based on the same course of conduct]; accord, Wilkoff v. Superior Court (1985) 38 Cal.3d 345, 349, 211 Cal.Rptr. 742, 696 P.2d 134 ["[A] charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute-the gravamen of the offense-has been committed more than once."]; People v. Coyle (2009) 178 Cal.App.4th 209, 217, 100 Cal.Rptr.3d 245 [invalidating three murder convictions for killing one person, where the "three counts simply alleged alternative theories of the offense"]; cf. White, supra , 2 Cal.5th at p. 352, 212 Cal.Rptr.3d 376, 386 P.3d 1172 [" '[T]he two statutory subdivisions at issue here describe different offenses, and defendant may properly be convicted of, although not punished for, both.' "].) *209 Because section 451 criminalizes a single offense of arson, under section 954 Shiga could not be convicted of both arson of an inhabited structure under section 451, subdivision (b), and arson of a structure under section 451, subdivision (c). Rather, the convictions are based on a single actus reus, of Shiga setting a fire in the church with a tiki torch. The People argue that because the fire spread and burned the rectory, a separate structure, he may properly be convicted of two counts of arson. We disagree. Arson can be accomplished by indirectly causing a structure, forest land, or property to burn. (See In re V.V., supra , 51 Cal.4th at p. 1024, 125 Cal.Rptr.3d 421, 252 P.3d 979 [upholding juvenile court's determination minors committed arson by throwing lit firecracker into brush-covered hillside, causing a five-acre brush fire]; People v. Hiltel (1901) 131 Cal. 577, 579-580, 63 P. 919 [defendant properly convicted for causing dwelling to burn where fire spread from a fire set in the wine cellar that was not the basis of the charge].) But it does not follow that a defendant is subject to multiple convictions for a single act if the fire burns multiple structures or pieces of property. To conclude otherwise would allow the arsonist who burns one home to be subject to a separate conviction for each piece of personal property burned inside the home.[21] Our conclusion is bolstered by the Legislature's enactment of an enhanced sentence in section 451.1, subdivision (a)(4), for an arson conviction where a defendant has proximately caused multiple structures to burn "in any single violation of Section 451."
We reverse Shiga's arson convictions on counts 2 and 5. On remand the People should elect whether to proceed on count 2 under section 451, subdivision (c), or on count 5 under section 451, subdivision (b). The trial court should then reinstate Shiga's conviction on the count elected by the People.
*482 3. Arson of a structure and arson of an inhabited structure are not lesser included offenses of aggravated arson
" '[I]t is generally permissible to convict a defendant of multiple charges arising from a single act or course of conduct. [Citations.] However, a "judicially created exception to this rule prohibits multiple convictions based on necessarily included offenses." ' " ( People v. Delgado (2017) 2 Cal.5th 544, 570, 214 Cal.Rptr.3d 223, 389 P.3d 805, italics omitted ( Delgado ); accord, People v. Cady (2016) 7 Cal.App.5th 134, 139-140, 212 Cal.Rptr.3d 319 ( Cady ).) "When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." ( People v. Sanders (2012) 55 Cal.4th 731, 736, 149 Cal.Rptr.3d 26, 288 P.3d 83 ; accord, Cady , at pp. 139-140, 212 Cal.Rptr.3d 319.)
" 'In deciding whether multiple conviction is proper, a court should consider only the statutory elements.' [Citation.] 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former.' [Citation.] In other words, ' "[i]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former." ' " ( *210 Delgado, supra , 2 Cal.5th at p. 570, 214 Cal.Rptr.3d 223, 389 P.3d 805 ; accord, Cady, supra , 7 Cal.App.5th at p. 140, 212 Cal.Rptr.3d 319.) "This determination is made in the abstract .... The evidence introduced at trial is irrelevant to this determination." ( People v. Chaney (2005) 131 Cal.App.4th 253, 256, 31 Cal.Rptr.3d 714.)
As the Court of Appeal in Cady reasoned, there are some scenarios under which "a defendant convicted of violating [Vehicle Code] section 23153, subdivision (f) by driving under the combined influence of alcohol and drugs would not have consumed enough alcohol to cause impairment had the alcohol been consumed by itself." ( Cady, supra , 7 Cal.App.5th at p. 143, 212 Cal.Rptr.3d 319.) Thus, "[b]ecause a person does not necessarily violate [ Vehicle Code section] 23153, subdivision (a) when he or she violates [ section] 23153, subdivision (f), we conclude under the elements test that the crime of driving under the influence of alcohol causing injury [citation] is not a lesser included offense of the crime of driving under the combined influence of alcohol and a drug causing injury [citation]." ( Cady , at p. 144, 212 Cal.Rptr.3d 319.)
*483 A person commits aggravated arson under section 451.5, subdivision (a), if he or she burns "any residence, structure, forest land, or property." As discussed, section 450, subdivision (c), defines "property" to include both real and personal property. As to simple arson, however, section 451, subdivision (d), provides that "arson of property does not include one burning or causing to be burned his or her own personal property unless there is an intent to defraud or there is injury to another person or another person's structure, forest land, or property." Thus, a defendant can commit aggravated arson by burning his or her own personal property with the intent to cause injury to a person or to property under circumstances likely to injure a person as set forth in section 451.5, without necessarily committing arson under section 451, if the defendant does not intend to defraud and the arson does not actually cause injury to another person or another person's structure, forest land, or property. Therefore, the offense of arson under section 451 is not a lesser included offense of aggravated arson. ( Delgado, supra , 2 Cal.5th at p. 570, 214 Cal.Rptr.3d 223, 389 P.3d 805 ; Cady, supra , 7 Cal.App.5th at p. 140, 212 Cal.Rptr.3d 319.)[22]
E.-F.†††
DISPOSITION
We reverse Shiga's convictions for arson on counts 2 and 5 and remand for the trial court to enter a conviction on one of the offenses under section 451, as elected by *211 the People. We also reverse the jury's true finding on the section 451.1, subdivision (a), enhancement as to count 1. We remand for resentencing with directions for the trial court (1) to stay Shiga's sentence on count 3 for possession of flammable material pursuant to section 654 and, (2) if it *484 reinstates Shiga's conviction on count 2, to impose only one 5-year sentence enhancement under section 451.1, subdivision (a).
WE CONCUR:
PERLUSS, P.J.
ZELON, J.

All further undesignated references are to the Penal Code.

In our discussion of the factual and procedural background of the case, we focus on the proceedings relevant to this appeal. We discuss the earlier proceedings in greater detail in Shiga I, supra , 6 Cal.App.5th 22, 210 Cal.Rptr.3d 611.

See footnote *, ante .

Shiga waived his rights under Miranda v. Arizona (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

See footnote *, ante .

The jury was not instructed and did not return a verdict on the special allegation as to count 1 that Shiga proximately caused multiple structures to burn (§ 451.1, subd. (a)(4)). At sentencing the trial court noted the enhancement only applied to violations of section 451, not section 451.5. On remand the trial court should dismiss the allegation.

The trial court's minute order following sentencing erroneously recorded the sentence on count 2 as 19 years.

See footnote *, ante .

See footnote *, ante .

Former section 451.5, subdivision (a), provided, "Any person who willfully, maliciously, deliberately, with premeditation, and with intent to cause injury to one or more persons or to cause damage to property under circumstances likely to produce injury to one or more persons or to cause damage to one or more structures or inhabited dwellings, sets fire to, burns, or causes to be burned, or aids, counsels, or procures the burning of any residence, structure, forest land, or property is guilty of aggravated arson if one or more" of three enumerated aggravating factors exists. The Legislature amended section 451.5, effective January 1, 2019. However, the amendments are not relevant to this appeal.

Section 451 provides in full, "A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property. [¶] (a) Arson that causes great bodily injury is a felony punishable by imprisonment in the state prison for five, seven, or nine years. [¶] (b) Arson that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for three, five, or eight years. [¶] (c) Arson of a structure or forest land is a felony punishable by imprisonment in the state prison for two, four, or six years. [¶] (d) Arson of property is a felony punishable by imprisonment in the state prison for 16 months, two, or three years. For purposes of this paragraph, arson of property does not include one burning or causing to be burned his or her own personal property unless there is an intent to defraud or there is injury to another person or another person's structure, forest land, or property."

Former section 288a, subdivision (a), defines "oral copulation" as the "act of copulating the mouth of one person with the sexual organ or anus of another person." But a person does not commit a crime if the conduct is performed with a consenting adult. Rather, the subdivisions provide the elements of the crime, including, in addition to subdivisions (f) (oral copulation with unconscious person) and (i) (oral copulation with intoxicated person), oral copulation with a person under 18 years of age (former § 288a, subd. (b)(1)) and oral copulation "accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person" (former § 288a, subd. (c)(2)(A)). Similarly, section 261, subdivision (a), at issue in White , defines "[r]ape" as "an act of sexual intercourse accomplished with a person not the spouse of the perpetrator." But not all sexual intercourse with a person other than a spouse is rape. Rather, the subdivisions provide the elements of the crime of rape, including sexual intercourse where a person is intoxicated (§ 261, subd. (a)(3)) or unconscious (§ 261, subd. (a)(4)).

Senate Bill No. 116 also created a new crime of " 'unlawfully causing a fire,' " codified in section 452. (Sen. Com. on Judiciary, Analysis on Sen. Bill No. 116 (1979-1980 Reg. Sess.) as amended Feb. 12, 1978, p. 2.)

Section 452 tracks the language of section 451, and provides, "A person is guilty of unlawfully causing a fire when he [or she] recklessly sets fire to or burns or causes to be burned, any structure, forest land or property. [¶] (a) Unlawfully causing a fire that causes great bodily injury is a felony punishable by imprisonment in the state prison for two, four or six years, or by imprisonment in the county jail for not more than one year, or by a fine, or by both such imprisonment and fine. [¶] (b) Unlawfully causing a fire that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for two, three or four years, or by imprisonment in the county jail for not more than one year, or by a fine, or by both such imprisonment and fine. [¶] (c) Unlawfully causing a fire of a structure or forest land is a felony punishable by imprisonment in the state prison for 16 months, two or three years, or by imprisonment in the county jail for not more than six months, or by a fine, or by both such imprisonment and fine. [¶] (d) Unlawfully causing a fire of property is a misdemeanor. For purposes of this paragraph, unlawfully causing a fire of property does not include one burning or causing to be burned his own personal property unless there is injury to another person or to another person's structure, forest land or property. ..."

The court in Corrigan also relies on In re Jonathan R. (2016) 3 Cal.App.5th 963, 971, in which the Court of Appeal concluded section 245, subdivision (a)(1) and (4), created separate offenses of assault with a deadly weapon and assault by means of force likely to produce great bodily injury, respectively, because under Gonzalez each subdivision stated the elements of the offense. (Corrigan, supra , 34 Cal.App.5th at p. ----, 245 Cal.Rptr.3d 756, 2019 WL 1513202, *5.) But the Court of Appeal in People v. Brunton (2018) 23 Cal.App.5th 1097, 233 Cal.Rptr.3d 686 declined to follow In re Jonathan R. , noting the Supreme Court's holding in Vidana supported consideration of the legislative history, which the Brunton court concluded supported its holding the Legislature did not intend by its 2011 amendment to section 245 to create two separate offenses of aggravated assault. (Brunton , at pp. 1106-1107, 233 Cal.Rptr.3d 686.) We likewise follow Vidana and conclude the legislative history and statutory scheme show the Legislature intended to create a single offense of simple arson.

Section 450, subdivision (c), defines "property" to include "real property or personal property, other than a structure or forest land."

Shiga also relies on the language in People v. Muszynski (2002) 100 Cal.App.4th 672, 684, 122 Cal.Rptr.2d 764, that "simple arson under section 451, which involves the willful and malicious burning of any structure, is a lesser included offense of aggravated arson ...." However, Muszynski did not involve a determination of whether the defendant could be convicted of both aggravated arson under section 451.5 and arson under section 451. Rather, after the court concluded insufficient evidence supported the defendant's conviction of aggravated arson under section 451.5, subdivision (a)(3), for causing damage to five or more inhabited structures, because the jury had been instructed that simple arson was a lesser included offense, the court "reduce[d] defendant's conviction to arson causing great bodily injury, a lesser included offense." (Muszynski , at p. 684, 122 Cal.Rptr.2d 764.) Notably, the Muszynski court did not analyze the relationship between sections 451 and 451.5 under the elements test applicable here. To the extent Muszynski can be read to bar a conviction for section 451 as a lesser included offense of aggravated arson, we disagree with our colleagues in the Sixth Appellate District.

See footnote *, ante .