Filed 11/17/21  P. v. Pineda CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B309607 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA107280) |
| v. | |
| GEORGE PINEDA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard M. Goul, Judge.  Reversed in part, affirmed in part, and remanded with directions.

Nicholas Seymour, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, and David E. Madeo and Theresa A. Patterson, Deputy Attorneys General for Plaintiff and Respondent.

# INTRODUCTION

George Pineda appeals from the judgment entered after a jury found him guilty on three counts of arson and three counts of child abuse under circumstances likely to produce great bodily harm or death. He contends that the jury improperly convicted him on three counts of arson based on a single act of setting fire to a house, that the trial court erred in denying his request for pretrial mental health diversion under Penal Code section 1001.36,[1] and that the court miscalculated his presentence custody credits.

The People concede and we agree with the first and third of Pineda's contentions. We disagree with the second. Therefore, we reverse Pineda's convictions on the three counts of arson, remand for the People to elect the count on which they want to proceed and for the trial court to reinstate the conviction on that count, and direct the trial court to correct Pineda's presentence custody credits. Otherwise, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Pineda Sets a House on Fire*

Pineda lived on the ground floor of a two-story house that had two bedrooms upstairs: one occupied by Pineda's father and stepmother, the other by Maritza Ruiz and her three children, Sarai (15 years old), Steven (13 years old), and Genesis (11 years old). One afternoon in August 2017 Ruiz and her children were in their bedroom when they heard Pineda yelling at his stepmother, who was also in the house. Ruiz and her children

_____

[1] Statutory references are to the Penal Code.

came out of the bedroom and saw Pineda coming up the stairs with a red gas can and a pickaxe. Having poured gasoline on the stairs, Pineda poured more at the top of the stairs and in his father and stepmother's bedroom, then started a fire. It quickly spread and became "one big flame."

With the stairs engulfed in flames, Ruiz and her children retreated to their bedroom. Ruiz told her children she would climb over a railing in the hallway and jump down to the first floor. She told them to follow and she would catch them. Ruiz climbed over the railing in the hallway and jumped to the first floor. In their fear and confusion, however, the children did not follow. Smoke filled the bedroom, and all three lost consciousness.

The children were rescued by emergency personnel and others who braved the fire and smoke to find the children and carry them out of the house. The children were taken to the emergency room, where Steven and Genesis were put into a medically induced coma and intubated. Steven had burns on 30 to 40 percent of his body, was unconscious for more than a month, received skin grafts, and eventually had part of his colon removed. Genesis had burns on 18 percent of her body, remained in the hospital for a month, and also received skin grafts. Sarai had burns on two to three percent of her body and remained in the hospital for five days.

In the evening after the fire, police officers arrested Pineda at his mother's house. He had burns on his hands and traces of accelerant on his hands and shoes. He admitted starting the fire and said it was an attempt to kill himself.

### B. *A Jury Convicts Pineda of Arson and Child Abuse, and the Trial Court Sentences Him*

The People charged Pineda with five counts of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664; counts 1 through 5), two counts of arson causing great bodily injury (§ 451, subd. (a); counts 6 and 7), one count of arson of an inhabited structure or property (§ 451, subd. (b); count 8), and three counts of child abuse under circumstances likely to produce great bodily harm or death (§ 273a, subd. (a); counts 9 through 11). In connection with the three counts of arson, the People alleged as aggravating factors that Pineda caused great bodily injury to more than one victim in a single violation of section 451 (§ 451.1, subd. (a)(3)) and that the arson was caused by use of a device designed to accelerate the fire or delay ignition (§ 451.1, subd. (a)(5)). In connection with the three counts of child abuse, the People alleged Pineda personally inflicted great bodily injury within the meaning of section 12022.7, subdivision (a).

Pineda represented himself at the jury trial. He testified that on the morning of the fire he woke up depressed, "just like any other day," that he had a history of drug use and suicide attempts, that he was later "diagnosed with bipolar disorder," and that he set fire to the house in an attempt to kill himself.

The jury found Pineda not guilty of attempted murder, but convicted him on all other counts. The jury also found true the allegations of aggravating factors on the arson counts and the allegation Pineda personally inflicted great bodily injury in committing the offenses charged in the child abuse counts. After the jury returned its verdict, Pineda requested and was appointed counsel. He then requested (through counsel) pretrial

4

mental health diversion under section 1001.36, which the trial court denied.

The court sentenced Pineda to an aggregate prison term of 20 years: on count 6 (arson causing great bodily injury), the upper term of nine years, plus five years for the enhancement under section 451.1, subdivision (a); on count 7 (arson causing great bodily injury), a consecutive term of 28 months, plus 16 months for the enhancement under section 451.1, subdivision (a); and on count 10 (child abuse of Sarai under circumstances likely to produce great bodily harm or death), a consecutive term of 16 months, plus 12 months for the enhancement under section 12022.7, subdivision (a). The court stated: "And on counts eight, nine, and 11, the remaining counts of which he was convicted, sentence is stayed." Pineda timely appealed.

## DISCUSSION

A. *The Jury Improperly Convicted Pineda on Three Counts of Arson*

Pineda contends, the People concede, and we agree the jury improperly convicted him on three counts of arson—two under section 451, subdivision (a), and one under section 451, subdivision (b)—for the single act of setting fire to the house. In *People v. Shiga* (2019) 34 Cal.App.5th 466 we held that section 451 criminalizes a single offense of simple arson, that subdivisions (a) through (e) of that section set forth different ways of committing that offense, and that therefore the defendant in that case could not be convicted under multiple subdivisions of section 451 based on "a single actus reus" of setting fire to a building. (*Shiga*, at pp. 476-481; see *People v.*

5

*Vidana* (2016) 1 Cal.5th 632, 650 [section 954 "'authorizes multiple convictions for different or distinct offenses, but does not permit multiple convictions for a different statement of the same offense when it is based on the same act or course of conduct'"].) Pineda can be convicted on only one count under section 451 for his one act of setting fire to the house.

We therefore reverse Pineda's convictions on the three counts of arson and remand for the People to elect the count on which they wish to proceed and for the trial court to reinstate the conviction on that count. (See *People v. Shiga*, *supra*, 34 Cal.App.5th at p. 481 [reversing the defendant's arson convictions on separate counts under section 451 and remanding for the People to elect the count on which to proceed and directing the trial court to reinstate the conviction on that count].) As the People request and Pineda does not dispute, the trial court may then reconsider its discretionary sentencing choices on all remaining convictions. (See *People v. McInnis* (2021) 63 Cal.App.5th 853, 866 ["when a defendant has an aggregate sentence and a count is reversed on appeal, the trial court may reconsider its prior sentencing choices"]; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1258 ["trial courts are, and should be, afforded discretion by rule and statute to reconsider an entire sentencing structure in multicount cases where a portion of the original verdict and resulting sentence has been vacated by a higher court"]; see also *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"].) In addition, the trial court (contrary to how the court proceeded on counts eight, nine, and

6

11) must impose a sentence on each count on which Pineda remains convicted, though the court, as appropriate, may stay execution of any such sentence. (See *People v. Alford* (2010) 180 Cal.App.4th 1463, 1472 ["the correct procedure is to impose sentence on each count and stay execution of sentence as necessary"].)

B. *Pineda Has Not Shown the Trial Court Erred in Denying His Request for Pretrial Mental Health Diversion, and Any Error Was Harmless*

1. *Relevant Proceedings*

In December 2020 counsel for Pineda filed a sentencing memorandum that requested pretrial mental health diversion under section 1001.36 or, in the alternative, consideration of Pineda's mental illness as a mitigating circumstance at sentencing. Attached to the memorandum was a December 2018 report by Dr. Raphael Morris, based on his pretrial psychiatric evaluation of Pineda. Dr. Morris acknowledged Pineda's "long-standing substance abuse problem," diagnosed him with bipolar disorder and methamphetamine dependence, and stated Pineda's "prominent symptom" at the time of his offense was paranoia. He stated his opinion that delusions resulting from "an underlying mood disorder" drove Pineda to his actions on that occasion and that his "disorders interfered with his capacity to appreciate the nature of his actions during the instant offense."

The sentencing memorandum also included a report from Dr. Armando de Armas, a psychologist who interviewed Pineda in October 2020, specifically to assist the trial court in evaluating Pineda's eligibility for pretrial diversion under section 1001.36.

Having diagnosed Pineda with "Major Depressive Disorder, Severe" and "Stimulant Use Disorder—Amphetamine-Type Substance, Severe," Dr. de Armas addressed the other eligibility criteria set forth in section 1001.36, including as follows:

"2. Was the mental disorder a significant factor in the commission of the offenses . . . ? Yes.

"[¶] . . .

"4. Do you believe that Mr. Pineda's symptoms of the mental disorder motivating the criminal behavior would respond to mental health treatment? Yes, with two caveats, that he maintain sobriety and consistently adhere to psychiatric treatment including therapy and psychotropic medications.

"[¶] . . .

"6. Is Mr. Pineda willing to comply with treatment as a condition of diversion? While Mr. Pineda voiced a commitment to complying with treatment, his history reflects inconsistent treatment compliance. Though Mr. Pineda may desire to comply with treatment, he likely lacks the internal fortitude to resist relapse into substance abuse should methamphetamine again become available to him when he is in a depressed mood.

"7. Does Mr. Pineda not pose an unreasonable risk of danger to public safety if treated in the community? Does pose a risk. Mr. Pineda's behavior during periods of untreated depression and while using methamphetamines has been unpredictable and volatile. During these episodes, he has attempted suicide and started a fire in his parents' home. While he ostensibly was not attempting homicide, victims in the home were injured and could have died as a result of his actions. Similarly, when Mr. Pineda walks into traffic in a suicide

8

attempt, drivers could be injured or killed when attempting to avoid driving into him.

"It is my opinion, treatment in a secure facility would be appropriate until Mr. Pineda's symptoms have been sufficiently stabilized."

At the sentencing hearing, counsel for Pineda, when invited to address the request for pretrial diversion under section 1001.36, stated: "Your Honor, the only thing I would add from what was reflected in the paperwork is Mr. Pineda is going to be managed by a mental health social worker right now, and that is in the unit which indicates there are people with mental illnesses. And I did speak to the social worker. She's indicating that there is a way to put him in the placement department. To have treatment they have to have an appropriate facility which would ensure that the community is protected and give him the services that he needs. And that's it."

The trial court stated: "There are two essential issues. Number one is whether he is technically eligible for mental health diversion, and the second issue is whether this court determines, given the facts of this case and the background of the defendant and the facts at trial and the nature of the charges, whether he is suitable for such diversion." The court asked the prosecutor if she wished to make any arguments "regarding suitability or eligibility."

The prosecutor answered that she was "unclear" whether Pineda was "eligible for mental health diversion," but that she "would say he [was] not suitable for mental health diversion." She argued, among other things, that the manner in which Pineda represented himself at trial "shows that he does not suffer from a mental health illness" and that "all of [Pineda's] conduct

9

leading up to the arson and including after the arson shows that he was completely aware of what he was doing and not suffering from any sort of mental illness at the time." She concluded: "All of his conduct throughout this whole incident show[s] that he was not suffering from a mental health illness, and I would argue he is not suitable for mental health diversion."

The trial court denied Pineda's request for mental health diversion. The court ruled: "The court has read and considered it, and the court does make a determination based upon the facts in the case, the rather remarkably good performance of Mr. Pineda representing himself in trial and showing that at the time of trial certainly he was in full—seemed to be in full capacity and performed much better than lawyers this court has seen in some trials, correctly getting the jury to come back not guilty on the most serious charges, the multiple counts of attempted murder. The event itself, as testified to and admitted by the defendant in his testimony, was thought out, calculated, a number of different individual decisions made along the way which led to the inevitable setting of the fires and continued setting of the fires and trying to stop anybody from getting out. So the court disagrees, and the court does not believe—while the court does believe he is eligible, the court does not believe he is suitable for mental health diversion, and the court would be proceeding with the standard sentencing on his case."

2.    *Applicable Law*

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders. The statute defines "'pretrial diversion"' as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial

10

process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .' (§ 1001.36, subd. (c).) The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*People v. Frahs* (2020) 9 Cal.5th 618, 626 (*Frahs*); see *ibid.* ["Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders."].)[2]

To be eligible for diversion under the statute, a defendant must show he or she meets six minimum requirements: "(1) the defendant suffers from a qualifying mental disorder; (2) the mental disorder was a 'significant factor' in the commission of the charged offense; (3) a qualified mental health expert opines the defendant's symptoms will respond to treatment; (4) the defendant consents to diversion and waives his or her speedy trial rights; (5) the defendant agrees to comply with the treatment as a condition of diversion; and (6) 'the defendant will not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' (§ 1001.36, subd. (b)(1)(A)-(F).)" (*People v. Moine* (2021)

---

[2]     "Section 1001.36 . . . became effective on June 27, 2018." (*People v. Oneal* (2021) 64 Cal.App.5th 581, 587.)

11

62 Cal.App.5th 440, 447-448; see § 1001.36, subd. (b)(3) ["[a]t any stage of the proceedings, the court may require the defendant to make a prima facie showing that the defendant will meet the minimum requirements of eligibility for diversion"]; *People v. Williams* (2021) 63 Cal.App.5th 990, 995 ["To be eligible for diversion, the defendant must meet six statutory criteria."].)

The trial court may also require the defendant to show "the defendant and the offense are suitable for diversion." (§ 1001.36, subd. (b)(3); see *Moore v. Superior Court* (2020) 58 Cal.App.5th 561, 572 ["if the court is satisfied that the defendant meets the six minimum eligibility requirements (§ 1001.36, subd. (b)(1)), and that the defendant and the offense are suitable for diversion (§ 1001.36, subd. (b)(3)), the court may divert the defendant into an approved mental health treatment program . . . ."].)[3] In

[3]     Neither the statute nor the case law offers much guidance on what "suitable for diversion" means or what considerations are appropriate when determining suitability. One treatise suggests: "[I]t seems clear the court can grant diversion if the minimum standards are met, and, correspondingly, can refuse to grant diversion even though the defendant meets the technical requirements of the program. [¶] There may be times, because of the defendant's circumstances, where the interests of justice do not support diversion of the case. . . . It may be that because of the defendant's level of disability there is no reasonably available and suitable treatment program for the defendant. The defendant's treatment history may indicate the prospect of successfully completing a program is quite poor. Conduct in prior diversion programs may indicate the defendant is now unsuitable. (See § 1001.36, subd. (h) [the court may consider past performance on diversion in determining suitability].) The court may consider whether the defendant and the community will be better served by the regimen of mental health court. (See

12

addition, section 1001.36, subdivision (c)(1)(A), provides that pretrial diversion under the statute is subject to the following requirement: "The court is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant." Thus, as the Supreme Court has summarized: "If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion." (*Frahs*, *supra*, 9 Cal.5th p. 627.)

"If the trial court grants pretrial diversion and the defendant performs 'satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion.' (§ 1001.36, subd. (e).) If the defendant does not perform satisfactorily in diversion, becomes gravely disabled, or commits new crimes, the court may reinstate criminal proceedings. (§ 1001.36, subd. (d).)" (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 448; accord, *Frahs*, *supra*, 9 Cal.5th at p. 627.)

---

§ 1001.36, subd. (c)(1)(B) [the court may consider interests of the community in selecting a program].) . . . In short, the court may consider *any* factor relevant to whether the defendant is suitable for diversion." (Couzens et al., Sentencing California Crimes (The Rutter Group Sept. 2021 supp.) § 7:21.)

### 3. *Analysis*

Pineda contends the trial court erred in denying his request for pretrial mental health diversion because the court based that ruling on its observations of Pineda's behavior during trial. He argues that the court's denial "is best understood as relying on the second" of the minimum eligibility factors—i.e., whether "'the defendant's mental disorder was a significant factor in the commission of the charged offense'"—and that the court "abused its discretion in finding [Pineda] did not meet this factor because it was based on findings not supported by substantial evidence."[4] He argues the court's observations of his behavior at trial were not substantial evidence because the court was not qualified to evaluate whether he suffered from a mental health disorder and, in any event, his behavior at trial was irrelevant to a determination of his psychiatric condition during the commission

---

[4] Although "[t]he standard of review on appeal from a trial court's denial of mental health diversion is not settled" (*People v. Moine*, *supra*, 62 Cal.App.5th at p. 448), courts have held that a trial court's "diversion eligibility determinations are reviewed for an abuse of discretion" (*Negron v. Superior Court* (Oct. 26, 2021, F083149) ___ Cal.App.5th ___, ___ [2021 WL 4963241, p. 5]). (Compare *Moine*, at pp. 448-449 [reviewing for abuse of discretion whether the defendant posed an unreasonable risk of danger to public safety if treated in the community] with *People v. Oneal, supra*, 64 Cal.App.5th at p. 592 [reviewing for substantial evidence whether the defendant's mental disorder was a significant factor in the commission of the charged offense].) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence [citation]." (*Moine*, at p. 449.)

14

of the charged offense. He also argues "the additional facts cited by the trial court were contrary to the evidence at trial and the jury's findings and thus were not supported by substantial evidence."

Contrary to Pineda's characterization of the trial court's ruling, however, the court did not find he was ineligible for diversion under section 1001.36 for failure to meet the second (or any other) minimum eligibility requirement. In fact, the court found Pineda was eligible for diversion, but ruled he was not suitable for it. Pineda does not address the latter finding, explain how it was error, or even suggest it was error. Because that finding was the basis for the court's decision to deny his request for pretrial diversion, Pineda has not demonstrated error. (See *People v. Cardenas* (2015) 239 Cal.App.4th 220, 227 ["'Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error.'"].)

Moreover, even if the court erroneously concluded Pineda was ineligible for diversion or unsuitable for diversion or both, any such error was harmless because there remained an additional unmet requirement: The court had to be satisfied "the recommended inpatient or outpatient program of mental health treatment" met Pineda's specialized mental health treatment needs. (See § 1001.36, subd. (c)(1)(A); *Frahs*, *supra*, 9 Cal.5th at p. 627.) As the People point out, and Pineda does not dispute, no program—inpatient or outpatient—was recommended here. Much less was a program recommended that addressed Pineda's specialized needs, which at a minimum included, according to Dr. de Armas, psychiatric therapy, psychotropic medication, and (at least initially) a secure facility. Because the court could not

possibly be satisfied with a recommended mental health treatment program that was not recommended, the result would be the same in the absence of any error Pineda contends the court committed.  Therefore, any such error was harmless.[5]

C.     *The Trial Court Miscalculated Pineda's Presentence Custody Credits*

Finally, Pineda contends, the People concede, and we agree the trial court miscalculated Pineda's presentence custody credits.  "A defendant is entitled to actual custody credit for 'all days of custody' in county jail.  [Citations.]  Calculation of custody credit begins on the day of arrest and continues through the day of sentencing." (*People v. Denman* (2013) 218 Cal.App.4th 800, 814; see § 2900.5, subd. (a).)  In addition, "[a]bsent contrary authority, 'a defendant receives what are commonly known as conduct credits toward his term of imprisonment for good behavior and willingness to work during time served prior to commencement of sentence.'" (*People v. Philpot* (2004) 122 Cal.App.4th 893, 907; see § 4019.)  For a defendant convicted of a felony offense listed in section 667.5, subdivision (c)—which includes arson in violation of section 451, subdivisions (a)

---

[5]     "Generally, California appellate courts apply either one of two standards for assessing harmless error: (1) the *Chapman* [i.e., *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705] test (harmless beyond a reasonable doubt); and (2) the *Watson* [i.e., *People v. Watson* (1956) 46 Cal.2d 818] test (a reasonable probability the error was harmless).  [Citations.]  The more stringent *Chapman* test applies in cases where federal constitutional errors are made; the less stringent *Watson* test applies in other cases." (*People v. Nicolas* (2017) 8 Cal.App.5th 1165, 1179.)  The result is the same here under either standard.

16

and (b)—conduct credits are "limited to 15 percent of [the defendant's] actual days in custody." (*People v. Brewer* (2011) 192 Cal.App.4th 457, 462; see § 2933.1, subds. (a) & (c).)

Pineda was arrested on August 31, 2017 and sentenced on December 4, 2020. He was therefore entitled to 1,192 days of actual custody credit, but the trial court awarded him only 1,159 days of actual custody credit. Pineda was entitled to another 178 days (15 percent of 1,192) of conduct credits, for a total of 1,370 days of total presentence custody credits, whereas the trial court awarded him only 1,333 days of presentence custody credits. We direct the trial court to correct this error.

## DISPOSITION

Pineda's convictions on the three counts of arson are reversed, and the trial court is directed to allow the People to elect the count on which they wish to proceed.  The trial court is also directed to reinstate the conviction on the count the People select, to resentence Pineda, to correct his presentence custody credit, and to correct the abstract of judgment and send a corrected copy to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

SEGAL, J.

We concur:

PERLUSS, P. J.

IBARRA, J.*

---

\*     Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18