Filed 5/9/23  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KIRK DOUGLAS WILLIAMS,<br><br>Defendant and Appellant. | C095663<br><br>(Super. Ct. No. 21FE011276) |

Defendant Kirk Douglas Williams attacked Scott Harrison with a 15-pound dumbbell.  He did so when Harrison entered defendant's room at the group home Harrison operated.  Apparently believing that Harrison was there to remove him from the home, defendant charged towards him, swinging the dumbbell and yelling, "you are going to have to kill me, I'm not going anywhere, it's my house."  Harrison took a step back and lost his footing, sliding down the wall that was behind him and onto the floor.  Defendant then swung the dumbbell again, this time downward towards Harrison's head.

1

Harrison's forearm blocked the blow.  Fortunately, Harrison's injuries were minor, consisting of a scrape and bruising on his forearm.

Based on this incident, a jury convicted defendant of one count of assault with a deadly weapon and one count of assault by means of force likely to produce great bodily injury.  The jury also found defendant was previously convicted of two strike offenses within the meaning of the Three Strikes law.  (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1]  The trial court sentenced defendant to serve six years in state prison (middle term of three years, doubled due to one of defendant's prior strike convictions) and imposed other orders.

On appeal, defendant contends: (1) we must vacate one of his assault convictions because section 245, subdivision (a)(1), defining assault with a deadly weapon, and section 245, subdivision (a)(4), defining assault by means of force likely to produce great bodily injury, are not separate offenses, but rather different ways of stating the same offense; (2) the trial court prejudicially erred and violated defendant's federal constitutional rights by failing to instruct the jury on simple assault as a lesser included offense, and failing to instruct the jury that it could consider limited injury or lack of injury in determining whether an object is a deadly weapon; (3) the prosecutor committed prejudicial misconduct and also violated defendant's constitutional rights by misstating the reasonable doubt standard during closing argument; (4) the cumulative prejudicial effect of the foregoing assertions of error requires reversal; and (5) the trial court committed prejudicial sentencing error by failing to consider the new lower term presumption of section 1170, subdivision (b)(6), and imposing an unstayed $300 restitution fine despite defendant's inability to pay.

---

**1**    Undesignated statutory references are to the Penal Code.

We reverse defendant's conviction for assault by means of force likely to produce great bodily injury and vacate the sentence that was imposed and stayed with respect to that count. As the Attorney General concedes, our Supreme Court has recently held that "assault with a deadly weapon and force likely assault [are] 'different statements of the same offense' for purposes of section 954." (*People v. Aguayo* (2022) 13 Cal.5th 974, 988 (*Aguayo*).) We otherwise affirm the judgment. As we shall explain, the first claimed instructional error is waived under the doctrine of invited error and the remaining claims of instructional error and prosecutorial misconduct are both forfeited and harmless. We also reject defendant's assertion of cumulative prejudice. His claims of sentencing error are also forfeited.

BACKGROUND

Harrison operated six group homes in the Sacramento area. The group homes provided housing for people with severe mental health issues and those experiencing chronic homelessness. Defendant became a resident at one of these homes in December 2020.

A few weeks into defendant's residency, Harrison started getting complaints from other residents' social workers concerning defendant's aggressive and irrational behavior. Harrison initially tried to work with defendant, going over the details of each incident with him, and viewing each as "a teaching moment." However, over the next several months, whenever Harrison or his business partner came to the house, defendant "would just call the police for no reason." This happened more than 20 times. Among other things, defendant claimed there were dead bodies at the house. Eventually, Harrison was told by law enforcement that he could be charged for excessive calls for service. This caused Harrison to stay away from the house as much as he could to avoid further conflict with defendant.

On July 5, 2021, Harrison was notified that the electricity had been cut and the plumbing was backed up at the house. Harrison called a plumber to meet him there that

3

afternoon. When Harrison arrived, he could hear defendant yelling "expletives" and "curses," and saying, "you all got to kill me to get me out of here." After Harrison spoke with the plumber, he checked on the welfare of the residents, including defendant.

Defendant was inside his room, "pacing back and forth," when Harrison got to his doorway. As Harrison stepped inside the room, defendant charged him, "like a bull," while swinging a 15-pound dumbbell and continuing to yell, "you are going to have to kill me, I'm not going anywhere, it's my house." Harrison did not initially see that defendant had a dumbbell. He simply thought he was being "bull-rushed" by defendant, so he took a step back, "trying to retreat." As Harrison did so, he lost his footing, slid down the wall that was behind him, and fell onto the floor. Defendant then swung the dumbbell again, this time downward towards Harrison's head. At this point, Harrison saw that defendant had a weapon. He blocked the blow with his right forearm. Harrison then punched defendant two or three times in the face with his left fist before securing the dumbbell and leaving the room. Both defendant and Harrison called the police.

Another resident at the group home, Hilliard Lamar, also saw the attack. Lamar testified that defendant swung the dumbbell while Harrison was backing up. Lamar confirmed that Harrison then fell to the floor and defendant continued swinging the dumbbell, estimating that he did so "more than twice." Harrison then "had to hit him" in order "to defend himself." Lamar further confirmed that during the attack, defendant was saying "he wasn't going to leave this house, they was going to have to kill him to get him out of the house."

We finally note that Harrison's injuries were minor, consisting of a scrape and bruising on his forearm. Harrison described his level of pain at the time as being a six or seven on a scale of one to ten. He did not seek medical attention and the injury healed on its own.

4

DISCUSSION

I

*Section 954*

Defendant contends we must vacate one of his assault convictions (specifically, count two) because section 245, subdivision (a)(1), defining assault with a deadly weapon, and section 245, subdivision (a)(4), defining assault by means of force likely to produce great bodily injury, are not separate offenses, but rather different ways of stating the same offense. The Attorney General concedes the error, but argues remand is the proper remedy. We accept the concession and conclude the proper remedy is to reverse defendant's conviction on count two and vacate the sentence that was imposed and stayed with respect to that count.

Section 954 provides in relevant part: "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts . . . . The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged . . . ."

The same criminal act or indivisible course of conduct can support multiple charges and multiple convictions without running afoul of section 954, "[u]nless one offense is necessarily included in the other" (*People v. Benavides* (2005) 35 Cal.4th 69, 97), or the purported "different offenses" (§ 954) are in reality " 'different statement[s] of the same offense . . . .' [Citation.]" (*People v. Vidana* (2016) 1 Cal.5th 632, 650), italics omitted (*Vidana*.) "Put another way, ' "if a defendant cannot be convicted of a greater and a lesser included offense based on the same act or course of conduct, dual convictions for the same offense based on alternate legal theories would necessarily be prohibited." ' [Citation.]" (*Aguayo, supra*, 13 Cal.5th at p. 982.)

5

Here, defendant was convicted of assault with a deadly weapon, as defined in section 245, subdivision (a)(1), and assault by means of force likely to produce great bodily injury (force likely assault), as defined in section 245, subdivision (a)(4), based on the same act of swinging the dumbbell at Harrison's head. As our Supreme Court has recently held, in enacting section 245, the Legislature did not intend subdivision (a)(1) and subdivision (a)(4) to define separate offenses, but rather "intended assault with a deadly weapon and force likely assault to constitute 'different statements of the same offense' for purposes of section 954." (*Aguayo, supra*, 13 Cal.5th at p. 988.) Multiple convictions are therefore prohibited.

With respect to remedy, defendant argues we should "vacate [his] conviction on count two." The Attorney General urges us to remand the matter "for the trial court to strike one of the two assault convictions." Neither party cites any authority for their preferred outcome. We note that in *Vidana*, involving improper multiple convictions for larceny and embezzlement, our Supreme Court affirmed the Court of Appeal's judgment striking the larceny conviction, but explained in a footnote that the Attorney General had not challenged that remedy, and further stated, "we express no opinion on whether striking the larceny conviction or the embezzlement conviction or consolidating the two convictions is the proper remedy." (*Vidana, supra*, 1 Cal.5th at p. 651, fn. 18.) In *Aguayo*, the court reversed the Court of Appeal's judgment affirming both assault convictions and remanded the matter for further proceedings, citing the *Vidana* footnote expressing no opinion as to the proper remedy, as well as *People v. Craig* (1941) 17 Cal.2d 453, in which the court modified the judgment to consolidate two rape convictions and then affirmed the modified judgment. (*Aguayo, supra*, 13 Cal.5th at p. 996; *People v. Craig, supra*, 17 Cal.2d at p. 459, overruled on another point in *People v. White* (2017) 2 Cal.5th 349, 359.)

In *People v. Coyle* (2009) 178 Cal.App.4th 209, we "consolidated" three murder convictions into one murder conviction (count one) by reversing and vacating the other

6

two murder convictions (counts two and three), together with the sentences imposed but stayed on those counts, and modifying the judgment with respect to count one to reflect certain findings that were made with respect to the other counts. (*Id.* at pp. 217-219; but see *People v. Shiga* (2019) 34 Cal.App.5th 466, 483 [reversing each of the improper multiple convictions and remanding the matter for the trial court to enter a conviction on one of the offenses, as elected by the People].)

We employ a similar remedy here. We shall reverse defendant's conviction for assault by means of force likely to produce great bodily injury (count two) and vacate the sentence that was imposed and stayed with respect to that count. In light of this conclusion, we address defendant's remaining claims of error solely with respect to their impact on his remaining assault with a deadly weapon conviction.

II

*Instructional Error Claims*

Defendant also claims the trial court prejudicially erred and violated his federal constitutional rights by failing to instruct the jury on simple assault as a lesser included offense, and failing to instruct the jury that it could consider a limited injury or lack of injury in determining whether an object is a deadly weapon. We conclude the first claimed instructional error is waived under the doctrine of invited error and the second is forfeited.

A. *Failure to Instruct on Simple Assault*

Simple assault is a lesser included offense of assault with a deadly weapon, the latter crime being nothing more than an assault that is committed with a deadly weapon. (*People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.)

" 'The trial court is obligated to instruct the jury on all general principles of law relevant to the issues raised by the evidence, whether or not the defendant makes a formal request.' [Citations.] 'That obligation encompasses instructions on lesser included offenses if there is evidence that, if accepted by the trier of fact, would absolve the

7

defendant of guilt of the greater offense but not of the lesser.' [Citations.] 'To justify a lesser included offense instruction, the evidence supporting the instruction must be substantial — that is, it must be evidence from which a jury composed of reasonable persons could conclude that the facts underlying the particular instruction exist.' [Citations.]" (*People v. Souza* (2012) 54 Cal.4th 90, 115-116 (*Souza*).)

Defendant argues the trial court erred in declining to instruct on simple assault in addition to assault with a deadly weapon because "a jury could have reasonably found that [he] committed assault but that the dumbbell does not constitute a deadly weapon[.]" The Attorney General responds that any error in failing to instruct on simple assault was invited by defendant, there was no error because the evidence was insufficient to support a finding that defendant committed only simple assault when he swung a 15-pound dumbbell at Harrison's head, and any error was harmless. We conclude the doctrine of invited error applies.

Notwithstanding the trial court's sua sponte duty to instruct on lesser included offenses where supported by substantial evidence, an appellate claim that the trial court erred by failing to do so "may be waived under the doctrine of invited error if trial counsel both ' "intentionally caused the trial court to err" ' and clearly did so for tactical reasons. [Citation.] Invited error will be found, however, only if counsel expresses a deliberate tactical purpose in resisting or acceding to the complained-of instruction. [Citations.]" (*Souza, supra*, 54 Cal.4th at p. 114.)

Here, during the instruction conference, the trial court asked defendant, who represented himself at trial, whether he was seeking instruction on any lesser included offenses. Defendant answered: "No, Your Honor." The trial court then asked defendant whether his defense was "that this never happened." Defendant answered: "Yes." The trial court again asked, "just so I understand your argument is going to be that this never occurred and that's the reason you don't want any lessers?" Defendant agreed and added: "Never happened." The trial court continued: "And I don't want to give instructions that

8

are inconsistent with the defense you are going with. I would normally give a lesser of an assault. Are you telling me you don't want me to do that?" Defendant responded: "No, I never assaulted." The trial court then stated: "I understand. But sometimes you ask for instructions even though they are – they are not consistent with your theory, right, you could still ask for lessers, and I would sometimes give them. I'm simply asking, are you objecting to me giving lessers?" Defendant answered: "Yes, Your Honor. I don't want any." The trial court again clarified: "Because of the arguments you intend to make." Defendant responded: "Right." The trial court acceded: "Then, I won't."

Based on this conversation with the trial court, we conclude defendant, acting as his own counsel, expressed a deliberate tactical purpose in resisting instruction on simple assault as a lesser included offense. Any error in failing to so instruct the jury was therefore invited by defendant and his appellate claim is waived. (See *Souza, supra*, 54 Cal.4th at p. 114.) "As [defendant] specifically invited the trial court not to instruct on the lesser included offense, he ' "may not invoke a trial court's failure to instruct on a lesser included offense as a basis on which to reverse a conviction." ' [Citation.]" (*People v. Cady* (2016) 7 Cal.App.5th 134, 147.)

B.     *Failure to Instruct on Limited or Lack of Injury*

Defendant also argues the trial court prejudicially erred and violated his constitutional rights by failing to instruct that "the jury can consider 'limited injury' or 'lack of injury' in determining whether an object qualifies as a 'deadly weapon.' " The contention is forfeited.

Defendant's argument is based on *In re B.M.* (2018) 6 Cal.5th 528, in which our Supreme Court held, "consistent with settled principles, that for an object to qualify as a deadly weapon based on how it was used, the defendant must have used the object in a manner not only capable of producing but also *likely to produce* death or great bodily injury." (*Id.* at p. 530.) The court further explained that although conviction of assault with a deadly weapon does not require proof of any actual injury, "limited injury or lack

9

of injury may suggest that the nature of the object or the way it was used was not capable of producing or likely to produce death or serious harm." (*Id*. at p. 535.)

Defendant's jury was instructed with CALCRIM No. 875, in relevant part, as follows: "No one needs to actually have been injured by defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was. [¶] *Great bodily injury* means significant or substantial physical injury. It is an injury that is greater than minor or moderate harm. [¶] *A deadly weapon other than a firearm* is any object, instrument, or weapon that is used in such a way that it is capable of causing and likely to cause death or great bodily injury. [¶] In deciding whether an object is a deadly weapon, consider all the surrounding circumstances."

We have previously held this instruction is not defective for failing to inform the jury that it may consider "the *absence* of injury in their determinations." (*People v. Golde* (2008) 163 Cal.App.4th 101, 121-122.) While the argument made by the defendant in *Golde* was different than the argument made in this case, specifically with respect to why the absence of injury was claimed to be relevant, and while *In re B.M.* clarifies that limited injury or absence of injury is relevant to whether the object in question was used as a deadly weapon, nothing in CALCRIM No. 875 would have instructed the jury to not consider such evidence. To the contrary, the instruction clearly directs the jury to consider "all the surrounding circumstances" in determining whether an object is a deadly weapon. Those circumstances include whether and to what extent the victim was injured. CALCRIM No. 875 remains an accurate statement of the law.

We decline to consider whether the instruction should have been modified in this case in the manner defendant urges on appeal because " ' "[a] party may not complain on appeal that an instruction correct in law and responsive to the evidence was too general or incomplete unless the party has requested appropriate clarifying or amplifying language." ' [Citations.]" (*People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1163.)

10

Defendant could have requested modification of CALCRIM No. 875 to inform the jury that limited injury or absence of injury was relevant to the question of whether the object used was a deadly weapon. He did not do so. The contention is therefore forfeited unless the claimed error affected defendant's substantial rights within the meaning of section 1259, "i.e., resulted in a miscarriage of justice, making it reasonably probable the defendant would have obtained a more favorable result in the absence of error." (*People v. Andersen* (1994) 26 Cal.App.4th 1241, 1249; *People v. Mason* (2013) 218 Cal.App.4th 818, 823.)

Here, even assuming the instruction should have been modified, there is no reasonable probability of a more favorable outcome. The defense argument at trial was not that Harrison suffered limited or no injury as a result of defendant's assault with the dumbbell, and therefore the assault was not with a deadly weapon. Defendant instead argued that Harrison was lying about there being an assault at all. The jury obviously believed Harrison's version of events, which was also corroborated by the testimony of another resident of the group home. Based on Harrison's testimony, he suffered minor injuries to his forearm as a result of the attack. A modified instruction would have highlighted this evidence for the jury. But the instruction, as given, was already broad enough for the jury to consider limited or lack of injury. As already mentioned, the instruction correctly informed the jury that injury was not required, but "if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault, and if so, what kind of assault it was." The instruction also directed the jury to consider "all the surrounding circumstances" in determining whether an object is a deadly weapon. Thus, the jury was already in a position to consider both the fact that Harrison was injured, and the limited nature of that injury, as part of the totality of the circumstances bearing on the question of whether an assault occurred, and if so, whether it was an assault with a deadly weapon.

11

Finally, even if the jury had been specifically told that lack of injury or limited injury was relevant to the deadly weapon determination, the ultimate question remains "whether the defendant's manner of using the object was likely to produce death or great bodily injury," and "the evidence may show that serious injury was likely, even if it did not come to pass." (*In re B.M., supra*, 6 Cal.5th at p. 535.) Swinging a 15-pound dumbbell downward at a person's head while that person is on the ground is likely to produce serious injury even if the person manages to block the blow with his forearm and sustains only minor injuries.

We conclude that had CALCRIM No. 875 been modified in the manner urged on appeal, there is no reasonable likelihood that any juror would have had reasonable doubt with respect to whether defendant's manner of using the dumbbell was likely to result in serious injury.

III

*Assertion of Prosecutorial Misconduct*

Defendant further asserts the prosecutor committed prejudicial misconduct and also violated his constitutional rights by misstating the reasonable doubt standard during the closing argument. The challenged comments are the following: "I'm required to prove this case beyond a reasonable doubt, and proof beyond a reasonable doubt is proof that leaves you with an abiding conviction the charge – *a lasting belief* that the charge is true." Citing our decision in *People v. Zepeda* (2008) 167 Cal.App.4th 25 (*Zepeda*), defendant takes issue with the italicized portion of the prosecutor's comments, pointing out that the term "abiding conviction" requires both a long lasting and a *deeply felt* belief. However, as defendant acknowledges, he did not object to the prosecutor's comments or ask the trial court to admonish the jury to disregard them. "It is the general rule that a defendant cannot complain on appeal of prosecutorial misconduct — in this case, misleading the jury on the law — unless the defendant objected at trial and requested an

admonishment from the court to the jury to disregard the impropriety." (*People v. Pierce* (2009) 172 Cal.App.4th 567, 572 (*Pierce*).) The contention is therefore forfeited.

In any event, as we explained while rejecting a similar argument in *Pierce*, "this issue ultimately comes down to whether there is a reasonable likelihood that the jury misunderstood the concept of 'reasonable doubt' based on [the prosecutor's] statements. This is because when a claim of prosecutorial misconduct 'focuses upon comments made by the prosecutor before the jury, the question [of the comments' prejudicial impact] is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion.' [Citations.]" (*Pierce, supra,* 172 Cal.App.4th at p. 572.) We concluded there was no such likelihood in *Pierce* because the jury was properly instructed on the reasonable doubt standard with CALCRIM No. 220 (*id.* at pp. 572-573), descriptions of the term "abiding conviction" found in case law "are self-evident and an unnecessary elaboration of a readily understood term" (*id.* at p. 573), the prosecutor's remarks were brief and generally consistent with the instruction, and the jury did not ask any questions during their deliberations concerning the reasonable doubt instruction or the meaning of "abiding conviction." (*Id.* at pp. 573-574.)

So too here. Defendant's jury was properly instructed with CALCRIM No. 220 on reasonable doubt. This instruction informed the jury, in relevant part: "Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is true. The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt." CALCRIM No. 220 is based on section 1096, which provides in relevant part: "Reasonable doubt is defined as follows: 'It is not a mere possible doubt; because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case, which, after the entire comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction of the truth of the

13

charge.' " (§ 1096.) No further instruction on reasonable doubt need to be given. (§ 1096a.) Thus, there was no problem with the reasonable doubt instruction, and the jury was specifically informed: "If you believe that the attorneys' comments on the law conflict with my instructions, you must follow my instructions."

Moreover, as in *Pierce*, the prosecutor's comments were brief and generally consistent with the instruction. To be sure, the phrase "abiding conviction" requires both "conviction," i.e., a firmly held or deeply felt belief, and for that firm belief to be "abiding," i.e., long lasting or enduring. After using that "readily understood term" (*Pierce, supra*, 172 Cal.App.4th at p. 573), the prosecutor added, "a lasting belief that the charge is true." This addition is obviously incomplete. It is consistent with the "lasting, permanent nature of the conviction connoted by 'abiding' " (*People v. Brigham* (1979) 25 Cal.3d 283, 290), but omits the strength of the belief connoted by "conviction." (See *Zepeda, supra*, 167 Cal.App.4th at pp. 30-31.) However, given that the jury was told to follow the trial court's instructions over any inconsistent comments made by the attorneys, we cannot conclude the jury would have substituted the prosecutor's improvised addition for the actual phrase found in the reasonable doubt instruction and repeated by the prosecutor during closing argument. Again, "[t]he phrase 'abiding conviction' does not require definition." (*Pierce,* at p. 573.)

Finally, as in *Pierce*, "the jury did not ask any questions concerning the instruction on reasonable doubt or the meaning of the concept of an abiding conviction. Thus, there is no reasonable likelihood that the prosecutor's brief remarks led the jury to think that 'an abiding conviction' of the truth of the charge was something less than the self-evident nature of [both] 'abiding' as 'settled and fixed' and 'lasting [and] permanent[]' " (*Pierce, supra*, 172 Cal.App.4th at pp. 573-574) and " 'conviction' " as "strong and convincing . . . and deeply felt" belief in the truth of the charge. (*Zepeda, supra*, 167 Cal.App.4th at pp. 30-31.) Thus, even if the claim were preserved, the record does not establish reversible error. (*Pierce*, at p. 574.)

14

IV

*Cumulative Prejudice*

Defendant also claims the cumulative prejudicial effect of the foregoing assertions of error requires reversal. "[A] series of trial errors, though independently harmless, may in some circumstances rise by accretion to the level of reversible and prejudicial error." (*People v. Hill* (1998) 17 Cal.4th 800, 844.) As we have explained, except for defendant's first assertion of error, requiring reversal of count two, each of the remaining assertions of trial error is either waived or forfeited, and the latter two are also harmless. Assuming, without deciding, that a cumulative assessment of prejudice is appropriate where the claims are waived or forfeited, we conclude defendant has not demonstrated cumulative prejudice requiring reversal.

V

*Sentencing Error Claims*

Finally, defendant contends the trial court committed prejudicial sentencing error by failing to consider the new lower term presumption of section 1170, subdivision (b)(6), and imposing an unstayed $300 restitution fine despite defendant's inability to pay. These contentions are also forfeited.

A.    *New Lower Term Presumption*

Effective January 1, 2022, Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) (Stats. 2021, ch. 731, § 1.3) amended section 1170 to add subdivision (b)(6), creating a presumption in favor of the lower prison term if "[t]he person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence," and this "was a contributing factor in the commission of the offense." (§ 1170, subd. (b)(6)(A); Stats. 2021, ch. 731, § 1.3.) Defendant was sentenced more than a month after this provision went into effect. He

15

argues the trial court neglected to consider this new lower term presumption.**2** However, as the Attorney General points out, defendant did not raise this issue before the trial court. The contention is therefore forfeited. (*People v. Scott* (1994) 9 Cal.4th 331, 351 [claims involving discretionary sentencing choices cannot be raised for the first time on appeal]; *People v. Flowers* (2022) 81 Cal.App.5th 680, 683-684 [appellant forfeited argument that the trial court erred in imposing the upper term pursuant to § 1170 as it existed at the time he was sentenced because he failed to object to the upper term sentence when it was imposed], review granted Oct. 12, 2022, S276237.)

Defendant argues he was not required "to specifically ask the trial court to consider the presumption of the low[er] term based on his psychological trauma" in order to preserve the issue for review because "[t]he trial court had a mandatory duty" to do so once it concluded there was psychological trauma triggering application of the lower term presumption. This argument is based on the assertion that because the trial court relied on defendant's "psychological issues" as a mitigating factor under California Rules of Court, rule 4.423(b)(2) when selecting the middle term, this finding of psychological issues is "equivalent to psychological trauma for purposes of section 1170, subdivision (b)(6)." Not so.

In *People v. Banner* (2022) 77 Cal.App.5th 226, the appellate court concluded mental illness *can* result in psychological trauma within the meaning of section 1170, subdivision (b)(6). (*Banner*, at pp. 240-241.) However, the court was careful to point out: "[W]e do not hold mental illness alone qualifies for the lower term presumption.

---

**2** While defendant's argument is framed in terms of the presumption created by Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124) (Stats. 2021, ch. 695), Senate Bill 567 was enacted after Assembly Bill 124 and incorporated Assembly Bill 124's amendments to section 1170. (Stats. 2021, ch. 731, § 3, subd. (c).) Senate Bill 567 takes precedence because it was enacted last. (Gov. Code, § 9605.) We, therefore, address defendant's contention as raised under Senate Bill 567.

16

Psychological trauma must attend the illness, and *that* trauma must contribute to the crime under section 1170, subdivision (b)(6)." (*Id.* at p. 241.) Thus, even though the trial court concluded defendant's psychological issues were a mitigating factor, this does not mean the lower term presumption automatically applied. Nor does it mean that defendant may raise this issue on appeal without having done so in the trial court.

Simply put, defendant did not raise the issue of whether his psychological issues resulted in trauma that contributed to the assault on Harrison. Having failed to do so before the trial court, defendant has forfeited the claim on appeal.

B.      *Imposition of the Restitution Fine*

Defendant's claim with respect to the restitution fine is based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, in which the appellate court held "that although the trial court is required by . . . section 1202.4 to impose a restitution fine, the court must stay the execution of the fine until and unless the People demonstrate that the defendant has the ability to pay the fine." (*Id.* at p. 1172.) However, a trial court is required to determine a defendant's ability to pay only if the defendant raises the issue. (*People v. Castellano* (2019) 33 Cal.App.5th 485, 490.) Although *Dueñas* was filed long before defendant's sentencing hearing, he did not object to the trial court's imposition of an unstayed restitution fine on the basis of his inability to pay. The claim is therefore forfeited.

17

## DISPOSITION

Defendant's conviction for assault by means of force likely to produce great bodily injury (count two) is reversed and the sentence imposed for that conviction is vacated. In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

_____\s\_____,
McADAM, J.*

We concur:

\_\_\_\_\_\s\_____,
MAURO, Acting P. J.

\_\_\_\_\_\s\_____,
DUARTE, J.

---

* Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18